[Cite as *State ex rel. Pfeiffer v. Columbus Inn & Suites*, 2014-Ohio-4358.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Columbus City Attorney,     :
Richard C. Pfeiffer, Jr.,

                               :

         Relator-Appellee,

                               :                  No. 14AP-132

v.                                            (M.C. No. 2013 EVH 60174)

                               :

Columbus Inn and Suites et al.,                       (REGULAR CALENDAR)

                               :

         Respondents-Appellants.

                               :

D E C I S I O N

Rendered on September 30, 2014

*Richard C. Pfeiffer*, *Jr.*, City Attorney, *William A. Sperlazza* and *Westley M. Phillips*, for appellee.

*Stephen H. Dodd*, for appellants.

APPEAL from the Franklin County Municipal Court

KLATT, J.

{¶ 1} Respondents-appellants, Mohammad and Umtul Ashraf, appeal a judgment of the Franklin County Municipal Court that found appellants guilty of maintaining a nuisance at property that they own, granted injunctive relief pursuant to R.C. 3767.05(D) and 3767.06(A), and taxed each appellant $300. For the following reasons, we affirm that judgment.

{¶ 2} In 2003, appellants bought property on Zumstein Drive that included two hotels. The property is situated in northern Columbus near the intersection of Interstate 71 and State Route 161. Appellants split the Zumstein Drive property into two parcels,

allocating one hotel to each parcel. Appellants sold the parcel at 6121 Zumstein Drive to Neera and Virendra Garg via a land installment contract in 2006. Under the terms of the land installment contract, appellants retained the legal title to 6121 Zumstein Drive until the Gargs paid the full purchase price. The Gargs struggled to make the monthly payments and failed to tender the balloon payment due on June 30, 2010. In July 2013, after the initiation of the instant lawsuit, appellants and the Gargs entered into an agreement terminating the land installment contract.

{¶ 3} From 2006 until June 2013, the Gargs operated a hotel, called the Columbus Inn and Suites, at 6121 Zumstein Drive. Mohammad Ashraf operated the neighboring hotel, as well as another hotel on the opposite side of Interstate 71.

{¶ 4} Unfortunately, the Columbus Inn and Suites developed a reputation as an outlet for illegal drugs and prostitution. From January 2012 to June 2013, officers of the Columbus Division of Police made 497 runs to the Columbus Inn and Suites. Throughout the spring 2012, Columbus police sent confidential informants to various rooms of the Columbus Inn and Suites to purchase narcotics. As a result of the controlled purchases, Columbus police executed three search warrants at the Columbus Inn and Suites. During the searches, the police found heroin, marijuana, guns, scales, syringes, and cash. In addition to the narcotics investigation, undercover police officers investigated prostitution at the Columbus Inn and Suites. As a result of those investigations, multiple individuals were convicted of prostitution-related charges.

{¶ 5} On June 11, 2013, relator-appellee, Richard C. Pfeiffer, Jr., the Columbus city attorney, filed a civil action against appellants pursuant to R.C. 3767.03.[1] The complaint demanded a judgment (1) finding that appellants maintained a nuisance; (2) permanently enjoining appellants from conducting, maintaining, using, occupying, or in any way permitting the use of 6121 Zumstein Drive as a nuisance; (3) ordering the sale of furniture, fixtures, and moveable property at the premises; (4) ordering the closure of the premises for one year; and (5) taxing appellants $300 each. At the same time he filed

---

[1] The city attorney also named as defendants the Columbus Inn and Suites, the real property located at 6121 Zumstein Drive, the Gargs, and Raxon Restaurant, Inc. (a corporation the Gargs controlled and a party to the land installment contract). Ultimately, the Gargs and Raxon Restaurant, Inc. stipulated that their operation of the Columbus Inn and Suites constituted a nuisance. The trial court permanently enjoined the Gargs and Raxon Restaurant, Inc. from maintaining a nuisance anywhere in Columbus or Franklin County and taxed them $300.

the complaint, the city attorney also filed a motion for a temporary restraining order ("TRO"), a Civ.R. 65(A) affidavit supporting that motion, and a motion for preliminary and permanent injunctive relief.

{¶ 6}   Without notice to appellants or their attorney, the trial court granted a TRO that ordered the forcible removal of all occupants of 6121 Zumstein Drive and closure of premises for any purpose.   The order provided that it would remain in effect until June 26, 2013—the date of the hearing on the merits of the complaint and the motion for preliminary and permanent injunctive relief—or as otherwise ordered by the court.

{¶ 7}   On June 21, 2013, appellants requested a continuance of the hearing scheduled for June 26, 2013.  The trial court granted that motion and rescheduled the hearing for July 25, 2013.  Two days after they received the continuance, appellants moved to dissolve the TRO or, in the alternative, for a hearing on the city attorney's motion for a preliminary injunction.  The trial court denied that motion in its entirety, stating that at the July 25, 2013 hearing, "the court will hear evidence * * * as it relates to Relator-Plaintiff's request for preliminary injunctive relief as set forth in R.C. 3767.04." (R. 20, at 2.)

{¶ 8}   Apparently, the July 25, 2013 hearing never occurred.  It appears from the docket that the parties first appeared in court on September 9, 2013, the date trial commenced.   Thus, the trial court never conducted a hearing on the city attorney's request for a preliminary injunction.  More troubling, the trial court never issued an order granting a preliminary injunction.

{¶ 9}   At the conclusion of the trial, the trial court issued a decision finding appellants guilty of maintaining a nuisance at 6121 Zumstein Drive.  The trial court found that appellants knew of the criminal activity at 6121 Zumstein Drive and that they did nothing to abate that activity.  In a judgment dated January 21, 2014, the trial court granted the city attorney all the relief that he asked for in the complaint.

{¶ 10} Appellants now appeal the trial court's January 21, 2014 judgment, and they assign the following errors:

### ASSIGNMENT OF ERROR NO. 1

> The Municipal Court erred in issuing a Temporary Restraining Order which authorized the Columbus Police to remove all occupants from the subject property and to close

the property against its use for any purpose until the Court rendered a final decision.

## ASSIGNMENT OF ERROR NO. 2

The final decision of the Municipal Court is against the manifest weight of the evidence.

{¶ 11} Before we address the merits of appellants' assignments of error, we will review the procedures set forth in R.C. Chapter 3767 for the abatement of nuisances. Pursuant to R.C. 3767.02(A), "[a]ny person, who uses, occupies, establishes, or conducts a nuisance" and "the owner * * * of an interest in any such nuisance" is "guilty of maintaining a nuisance and shall be enjoined as provided in" R.C. 3767.03 to 3767.11. The attorney general, a village solicitor, a city or township director of law, a prosecuting attorney, or a private citizen "may bring an action in equity in the name of the state * * * to abate the nuisance and to perpetually enjoin the person maintaining the nuisance from further maintaining it." R.C. 3767.03.

{¶ 12} At the same time the relator files a nuisance complaint, he or she may apply for a preliminary injunction pursuant to R.C. 3767.04(B).[2] If the relator applies for a preliminary injunction, he or she may also request an ex parte restraining order "restraining the [respondent] and all other persons from removing or in any manner interfering with the personal property and contents of the place where the nuisance is alleged to exist." R.C. 3767.04(B)(2). If granted, the restraining order remains in effect until the trial court issues a decision on the preliminary injunction application or the court otherwise orders. *Id.*

{¶ 13} The trial court must hold a hearing on an application for a preliminary injunction within ten days of the filing of the application. R.C. 3767.04(B)(1). At least five days prior to that hearing, the respondent must be served with the complaint, the application for the preliminary injunction, and a notice of the time and place of the hearing. R.C. 3767.04(B)(3). If the respondent moves to continue the hearing, "the requested [preliminary] injunction shall be granted as a matter of course." *Id.* If the

---

[2] R.C. 3767.04 uses the term "temporary injunction" rather than the more modern term "preliminary injunction." The two terms, however, are equivalent. *State ex rel. Pizza v. Rayford*, 62 Ohio St.3d 382, 383 (1992), fn. 1. To avoid confusion between a TRO and a "temporary injunction," we will use the term "preliminary injunction" throughout this decision.

hearing goes forward and, at the hearing, the relator satisfies the trial court that he or she can sustain the allegations of the complaint, the court must issue a preliminary injunction restraining the respondent and any other person from continuing the nuisance. *Id.* In addition to ordering a halt to the nuisance, the preliminary injunction must continue the restraining order in effect or, if no restraining order exists, restrain the respondents and others from removing or interfering with the personal property and contents of the place where the nuisance is alleged to exist. *Id.* Finally, unless the owner of the nuisance shows that he has abated the nuisance or enforced his rights under R.C. 3767.10,[3] the preliminary injunction must also "clos[e] the place against its use for any purpose of lewdness, assignation, prostitution, or other prohibited conduct until a final decision is rendered on the [nuisance] complaint." R.C. 3767.04(B)(3). Importantly, "[t]he scope of this temporary closure order is limited to the prevention of prohibited activity and does not authorize the court to order an 'effectual closing * * * against its use for any purpose' * * * via padlocking or otherwise." *State ex rel. Pizza v. Rezcallah*, 84 Ohio St.3d 116, 121 (1998), quoting R.C. 3767.06(A).

{¶ 14} A property owner may preempt the entry of a preliminary injunction or seek its termination by posting a bond for the full value of the property, paying the costs of the action, and promising to immediately "abate the nuisance and prevent it from being established or kept" until a decision on the nuisance complaint. R.C. 3767.04(C). The court must refrain from issuing or dissolve the preliminary injunction if the owner complies with these requirements and the court is satisfied of the owner's good faith. *Id.*

{¶ 15} The relator must prove his case at trial.[4] If the relator succeeds, the trial court must enter a judgment that (1) "perpetually enjoins the [respondent] and any other person from further maintaining the nuisance at the place complained of and the [respondent] from maintaining the nuisance elsewhere," R.C. 3767.05(D), and (2) orders the abatement of nuisance, R.C. 3767.06(A). *Rezcallah* at 122 (holding that the entry of a permanent injunction pursuant to R.C. 3767.05(D) and 3767.06(A) is mandatory).

---

[3] Pursuant to R.C. 3767.10, when a tenant or occupant uses a building for "the purposes of lewdness, assignation, or prostitution," the owner may void the tenant's or occupant's title to the premises and immediately retake possession.

[4] We discuss below the elements a relator must prove and the applicable degree of proof.

{¶ 16} Pursuant to R.C. 3767.06(A), where the owner has not provided a bond prior to the trial, and where the trial court has not issued a temporary closure order, the judgment must also order "the effectual closing of the place where the nuisance is found to exist against its use for any purpose and keeping it closed for a period of one year." If the owner has furnished a bond, the judgment must require the renewal of the bond for one year. *Id.* If the trial court previously issued a preliminary injunction that included a closure order, the judgment must continue the closure against all use for one year from the date of the judgment. *Id.*; *State ex rel. Miller v. Nu-Look Bookstore*, 10th Dist. No. 90AP-939 (Apr. 30, 1991) (holding that "where a court finds a nuisance, it is to issue an order closing the premises against their use for any purpose regardless of whether a temporary order was granted or not" and " 'continue for one year' means close the premises for one year from the date final judgment is entered").

{¶ 17} Additionally, the judgment must "direct the removal from the place where the nuisance is found to exist of all personal property and contents used in conducting or maintaining the nuisance." R.C. 3767.06(A). The personal property and contents removed must be sold at a public auction, with the proceeds paying the costs associated with the nuisance action. R.C. 3767.06(C) to (F). Finally, the judgment must impose a tax of $300 against each person who maintained the nuisance. R.C. 3767.08. The tax, however, may not be levied against an owner of real property who has shown that the he or she has permanently abated the nuisance. *Id.*

{¶ 18} Turning to the case at bar, we will begin our analysis with appellants' second assignment of error. By that assignment of error, they argue that the manifest weight of the evidence sustains their contention that they did not acquiesce to the criminal conduct occurring at the Columbus Inn and Suites. We disagree.

{¶ 19} As stated above, an owner of an interest in a nuisance is guilty of maintaining a nuisance. R.C. 3767.02(A). As used in R.C. Chapter 3767, the word "nuisance" means: (1) "[t]hat which is defined and declared by statutes to be a nuisance," and (2) "[a]ny place in or upon which lewdness, assignation, or prostitution is conducted, permitted, continued, or exists." R.C. 3761.01(C)(1) and (2). Additionally, R.C. 3719.10 states that "[p]remises or real estate * * * on which a felony violation of Chapter 2925. or

3719. of the Revised Code occurs constitute a nuisance subject to abatement pursuant to Chapter 3767. of the Revised Code."

{¶ 20} In a civil action brought under R.C. 3767.03, the relator bears the burden of proving his case by clear and convincing evidence. *State ex rel. Herring v. Bean*, 6th Dist. No. L-01-1463, 2002-Ohio-4350, ¶ 10; *State ex rel. Freeman v. Pierce*, 61 Ohio App.3d 663, 670 (2d Dist.1991). Clear and convincing evidence of the existence of a nuisance suffices to prove the property owner guilty of maintaining a nuisance. *Rezcallah* at 88. Further evidence is necessary, however, to obtain a permanent injunction closing the premises that constitutes the nuisance. For a court to order the closure of the premises against all purposes, the relator must also prove by clear and convincing evidence that the owner acquiesced to or participated in the creation and/or perpetuation of the nuisance. *Rezcallah* at 94; *Cincinnati ex rel. Cosgrove v. Grogan*, 141 Ohio App.3d 733, 746 (1st Dist.2001). If the trial court finds the relator's evidence unpersuasive or insufficient, and the court instead determines "that a defendant owner acted in good faith, was innocent of any acquiescence to or participation in the conduct establishing the nuisance, and took prompt action to abate the nuisance," then the court may not issue a closure order under R.C. 3767.06(A). *Rezcallah* at 94.

{¶ 21} Pursuant to R.C. 3767.05(A), "evidence of the general reputation of the place where the nuisance is alleged to exist or an admission or finding of guilt of any person under the criminal laws against prostitution, lewdness, assignation, or other prohibited conduct at the place * * * is prima-facie evidence of * * * knowledge of and of acquiescence and participation in the nuisance on the part of the person charged with maintaining it." Thus, a relator may meet his burden of proving acquiescence or participation with three different types of evidence: direct evidence, evidence of a property's general reputation, and evidence of convictions resulting from activities at the site of the alleged nuisance. *State ex rel. Waldick v. Howard*, 3d Dist. No. 1-11-33, 2012-Ohio-404, ¶ 25.

{¶ 22} Here, appellants do not dispute that the city attorney proved that the Columbus Inn and Suites constituted a nuisance. Appellants, instead, contend that they did not know of, and consequently did not acquiesce in, the criminal activity that made the Columbus Inn and Suites a nuisance.

{¶ 23} Appellants initially attack the validity of R.C. 3767.05(A). According to appellants, *Rezcallah* requires a relator to provide direct evidence of acquiescence or participation and precludes reliance on general reputation and criminal convictions as prima facie evidence. We are not persuaded. In *Rezcallah*, the Supreme Court of Ohio did not discuss the various methods of proof, much less negate R.C. 3767.05(A). We thus conclude that the city attorney could rely on prima facie evidence to prove appellants' acquiescence to the criminal conduct that constituted the nuisance at the Columbus Inn and Suites.

{¶ 24} Appellants next maintain that the manifest weight of the evidence does not support the trial court's conclusion that appellants acquiesced to the criminal activity that formed the nuisance. Appellate courts will not reverse judgments supported by some competent, credible evidence as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280 (1978). " 'Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief." ' " (Emphasis omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990). Thus, in reviewing a judgment under the manifest-weight standard, an appellate court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way. *Eastley* at ¶ 20. In so applying the standard, the appellate court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶ 25} Here, the city attorney offered both prima facie and direct evidence to prove appellants' acquiescence. First, the city attorney presented evidence of the Columbus Inn and Suites' poor reputation through the testimony of three Columbus police officers and a local resident, all of whom were familiar with the hotel. Officer Scott Clinger stated that the Columbus Inn and Suites was "absolutely the worst place that I have found in my entire career * * * because [of] the conditions of the hotel, the people that were staying there, [and] the things that were going on." (Tr. 214.) Officer Andrew Ward testified that

the Columbus Inn and Suites had a reputation as "a hub of * * * prostitution [and] drugs." (Tr. 271.)   According to Officer Karl Shaw, the Columbus Inn and Suites had the reputation as the "hotel [to go to] if you wanted to buy drugs or if you wanted to sell drugs * * *, or if you are a prostitute, that's where you would go to get a room."  (Tr. 274-75.) Brendon Boos, the vice president of the Salem Civic Association and secretary of the Northland Community Council, testified that, "[w]ithout a doubt[,] [the general reputation of the Columbus Inn and Suites] is negative.  The reputation of it is to the point that it actually drags down the rest of the properties around it.  You don't have to spend a lot of time there to feel that it is a blight on the community."  (Tr. 370.)

{¶ 26}  The city attorney also presented evidence of prostitution-related convictions arising from activities that occurred at the Columbus Inn and Suites.   Officer Ward testified that on January 27, 2012, while working undercover, he met Michael Bernard at the southwest stairwell of the Columbus Inn and Suites.  Bernard procured a prostitute, Victoria Eiter, for Officer Ward.  Bernard and Eiter were arrested and charged as a result of this incident.  Bernard pleaded guilty to attempted procuring, a violation of Columbus City Code 2323.02 and 2307.23.  Eiter pleaded guilty to soliciting, a violation of Columbus City Code 2307.24.

{¶ 27}  Officer Shaw testified to a second undercover investigation that occurred on March 12, 2012.  An undercover police officer called a phone number posted on an online advertisement for escort services and was directed to a room at the Columbus Inn and Suites.   At the hotel room, the undercover police officer was solicited to patronize a prostitute.   Based on these events, three individuals each pleaded guilty to unlawful restraint, a violation of R.C. 2905.03, and promoting prostitution, a violation of R.C. 2907.22.

{¶ 28}  In addition to presenting prima facie evidence of acquiescence, the city attorney also adduced direct evidence that Mohammad Ashraf knew of and acquiesced to criminal activity at the Columbus Inn and Suites.  On November 3, 2011, Officers Clinger and Larry Geis hand delivered a letter to Ashraf informing him that, on October 12, 2011, the police had obtained evidence of illegal drug activity and prostitution that had occurred at the Columbus Inn and Suites.  The letter stated, "Please be aware that if this illegal activity continues at your property, it may result in your property being subject to an

abatement action and declared a nuisance."  Ashraf signed the police copy of the letter to acknowledge receipt of it.  Virendra Garg, who was operating the Columbus Inn and Suites, received an identical letter.  After receiving the letter, Garg met with Ashraf and proposed that they jointly hire a security guard to patrol their hotels.  Ashraf refused.

{¶ 29} In early March 2013, Garg showed Ashraf his copy of the search warrant that the police executed at the Columbus Inn and Suites on February 21, 2013.  The search warrant stated that a confidential informant purchased heroin from an individual in room 144 of the Columbus Inn and Suites.  Ashraf did not say anything in response to the search warrant.

{¶ 30} The police subsequently searched the Columbus Inn and Suites pursuant to a warrant on May 30, 2013.  The May warrant was based on a confidential informant's purchase of heroin from an individual in room 212 of the Columbus Inn and Suites.  Garg talked with Ashraf about the May warrant.  During that conversation, Garg again suggested that they jointly hire a security guard.  Ashraf again refused.

{¶ 31} Officer Clinger testified that throughout 2012 and 2013 he gave oral reports about criminal activity in the area of State Route 161 during the monthly meetings of the 161 Task Force.  Ashraf was a member of the 161 Task Force.  Ashraf was present at meetings where Officer Clinger discussed the crime occurring at the hotels located at the intersection of Interstate 71 and State Route 161.  According to Officer Clinger, he specifically targeted the Columbus Inn and Suites in those discussions "because that was our main focus, and that was the worst [hotel] on the table over and over in many community meetings."  (Tr. 224.)

{¶ 32} Ashraf never approached Officer Clinger, who is a community liaison officer, for assistance with or suggestions for dealing with the criminal activity at the Columbus Inn and Suites.  In fact, prior to the filing of the complaint, Ashraf admittedly took no affirmative action to stem the criminal activity at Columbus Inn and Suites.  Ashraf's only response was to obtain Garg's assurance that he was taking all possible steps to deal with the situation.

{¶ 33} To counter this evidence, Ashraf first claims ignorance.  At trial, Ashraf testified that he never witnessed any criminal activity when he visited the Columbus Inn and Suites.  Ashraf also stated that he was unaware of the incidents of drug sales and

prostitution that the Columbus police officers testified about.   The trial court did not believe Ashraf; it concluded instead that Ashraf knew "full well of the serious and ongoing criminal activities taking place at Columbus Inn and Suites."  (R. 50, at 6.)  We concur with the trial court's assessment of Ashraf's credibility.  Ashraf worked six to seven days a week at the neighboring hotel and his hotel on the other side of Interstate 71.  He drove by Columbus Inn and Suites approximately once a day, and, according to Garg, he visited about once a month to collect Garg's monthly payment under the land installment contract.   Given the frequent police presence at the Columbus Inn and Suites,[5] the prostitutes and drug dealers that habitually loitered outside the premises, and the multiple drug needles that could be found scattered around the premises, we find it hard to accept that Ashraf did not know of the chronic criminal activity at the Columbus Inn and Suites.

{¶ 34} Next, Ashraf asserts that there was nothing that he could do to abate the criminal activity at the Columbus Inn and Suites, so he should not be faulted for his failure to act.  We recognize that Garg, not Ashraf, controlled the operation of the Columbus Inn and Suites.  However, Ashraf ignores the options that were open to him: asking the police for advice regarding what he and Garg could do to combat the illegal activity, and asking Garg to implement any police suggestions.  Officer Clinger testified to a number of tactics a hotel owner can employ in response to criminal activity, including hiring a security guard or special-duty police officer, refusing to rent rooms to known criminals or troublemakers, asking at check-in for identification from everyone who will be visiting a room and reporting anyone else on the property to the police as a trespasser, and refusing to rent rooms for long-term stays.  Ashraf neither sought out nor asked Garg to use these tactics.  Moreover, Ashraf did not even ask Garg if he was taking *any* anti-crime measures.  When Garg took the initiative and requested that Ashraf join him in hiring a security guard, Ashraf turned him down.

{¶ 35} In sum, we find abundant competent, credible evidence supports the trial court's determination that appellants acquiesced in the criminal activity that created and

---

[5] As we stated above, the Columbus police made 497 runs to the Columbus Inn and Suites from January 2012 to June 2013.   Officer Clinger characterized this number of runs as "extremely high" and a significant drain on police resources.  (Tr. 216.)

perpetuated the nuisance at the Columbus Inn and Suites. Accordingly, we overrule appellants' second assignment of error.

{¶ 36} By appellants' first assignment of error, they argue that the trial court erred in entering the TRO that forcibly removed the occupants of the Columbus Inn and Suites and closed the hotel. Appellants contend that R.C. 3767.04(B)(2) provides the only authority for the issuance of a TRO in a civil nuisance action, and thus, the city attorney could not seek, and the trial court could not grant, a TRO under Civ.R. 65.

{¶ 37} We agree with appellants that the trial court relied on Civ.R. 65, rather than R.C. 3767.04(B)(2), to grant the TRO. Pursuant to R.C. 3767.04(B)(2), a trial court may grant a TRO to prevent the removal of personal property and contents from the place of the alleged nuisance. The TRO at issue here granted much broader injunctive relief. Consequently, in granting it, the trial court must have relied on Civ.R. 65(A), which does not limit the type of relief the court may order in a TRO.

{¶ 38} Although we concur with appellants that Civ.R. 65(A) served as the authority for granting the TRO, we disagree with them regarding the duration of the TRO. Both appellants and the city attorney appear to believe that the TRO remained in effect until the trial court entered the January 21, 2014 final judgment. They are incorrect. By its terms, the TRO "remain[ed] in effect until [June 26, 2013] or as otherwise ordered by this Court." (R. 6, at 8.) The trial court never issued an order extending the length of the TRO.[6] Thus, the TRO expired on June 26, 2013.

{¶ 39} The city attorney points out that he also moved for a preliminary injunction pursuant to R.C. 3767.04, and, because appellants requested and received a continuance of the hearing on that motion, R.C. 3767.04(B)(3) mandated that the trial court grant the preliminary injunction. The city attorney correctly recites the law. The trial court, however, never granted the city attorney's motion and never issued a preliminary injunction. Accordingly, after the expiration of the TRO on June 26, 2013, no closure order existed until the trial court ordered a one-year closure of the premises in the January 21, 2014 final judgment.

---

[6] We note that Civ.R. 65(A) restricts a trial court's ability to lengthen the duration of a TRO. "Under Civ.R. 65(A), a temporary restraining order is effective for up to fourteen days, subject to renewal for one additional term of fourteen days. If renewed, a TRO absolutely expires twenty-eight days from its original issuance unless the adverse party consents to a longer term." *Rayford*, 62 Ohio St.3d at 386, fn. 4.

{¶ 40} Once the TRO expired, the controversy surrounding the entry of that order became moot. *State ex rel. Celebreeze v. Bd. of Cty. Commrs. of Allen Cty.*, 32 Ohio St.3d 24, 26 (1987), fn. 2 ("The injunction in question is no longer in force, having expired upon the resolution of the case by the trial court, and the issue of its propriety is therefore moot."); *McClead v. McClead*, 4th Dist. No. 06CA67, 2007-Ohio-4624, ¶ 14 ("[T]he expiration of a challenged order renders an appeal of that order moot."). Issues are moot when they present no actual, genuine, live controversy, the decision of which can definitely affect existing legal relations. *Kormanik v. Cooper*, 195 Ohio App.3d 790, 2011-Ohio-5617, ¶ 12 (10th Dist.). Ohio courts exercise restraint in cases that do not present actual controversies. *Tschantz v. Ferguson*, 57 Ohio St.3d 131, 133 (1991). If while an action is pending, an event occurs that renders it impossible for a court to grant any effectual relief, the court will generally dismiss the action. *Id.*, quoting *Miner v. Witt*, 82 Ohio St. 237 (1910), syllabus.

{¶ 41} We suspect that appellants would argue that a live controversy remains because we could compensate them for an improperly granted TRO by subtracting the number of days the TRO was in force from the one-year closure period ordered in the January 21, 2014 final judgment. We reject this argument. R.C. 3767.06(A) mandates the effectual closing of the place where the nuisance is found to exist "for a period of one year." If we altered the one-year period, we would contravene statutory law. We cannot do that. Accordingly, we conclude that the expiration of the TRO mooted any question of its propriety, and we overrule as moot appellants' first assignment of error.

{¶ 42} For the foregoing reasons, we overrule as moot appellants' first assignment of error, and we overrule appellants' second assignment of error. We affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

SADLER, P.J., and LUPER SCHUSTER, J., concur.

————————————