OPINION
{¶ 1} The plaintiffs-appellants, Nicholas and Elise Clark and Rickie Miller, appeal the February 21, 2003 judgment of the Common Pleas Court of Allen County, Ohio, granting judgment in favor of the defendants-appellees/cross-appellants, Clayton and Susan Osting. In addition, the Ostings appeal this same judgment, asserting as error the trial court's limitations of certain "variances"[1] granted to them.
 {¶ 2} The relevant facts of this case are as follows. In February of 1994, Susan Osting, who was and remains married to Clayton Osting, purchased a parcel of land in Delphos, Ohio, from James and Jean Grothause. This parcel was numbered as lots 1205 and 1206 in the Heritage Meadows Subdivision, which was developed by the Grothauses. The deed to this land was later duly recorded on June 24, 1994.
 {¶ 3} Four years later, the Ostings constructed a home on these lots. This home included office space, which Clayton, a licensed attorney, began to use as his law office sometime in 2000. The home also had two driveways. One driveway opened to Krieft Street, a residential street in the subdivision, and the other driveway opened to State Route 190, the roadway abutting the western portion of the subdivision. In order to indicate that Clayton's law office was located in the home he shared with Susan and their two children, a sign was placed at the end of the St. Rt. 190 driveway on a column.
 {¶ 4} On September 13, 2001, the Clarks and Rickie Miller, all of whom live in the subdivision, filed a complaint against the Ostings, requesting that they be permanently enjoined from operating any type of business from their home in the Heritage Meadows Subdivision and from erecting any type of sign on this property because both of these actions were prohibited by restrictive covenants for the subdivision. The Ostings filed an answer in response to this complaint and asserted that they obtained a variance from the grantors of their property, James and Jean Grothause. After several depositions were taken and various motions for summary judgment were filed and overruled, the matter proceeded to a trial before the bench on February 13, 2003. The matter was taken under advisement, and on February 21, 2003, the trial court determined that the Ostings had a valid variance and, accordingly, found in their favor and did not grant the injunction. This appeal followed, and the appellants now assert four assignments of error.
The trial court erred in failing to enforce the prohibitioncontained in restriction no. 1 upon the basis that the platrestrictions in the case are indefinite and capable ofcontradictory interpretations.
 The trial court erred in determining that a grantor-developerof a subdivision can unilaterally alter recorded subdivisionrestrictions.
 The trial court erred in granting affirmative relief to aparty as a personal variance when the party owns no interest inthe real estate at issue.
 The verdict of the trial court is against the manifest weightof the evidence and the judgment is contrary to law.
 {¶ 5} Each of these assignments of error relates to whether the trial court erred in denying injunctive relief to the appellants and, as such, will be discussed together.
 {¶ 6} Our review of this issue begins by noting that "`[t]he allowance of an injunction rests within the sound discretion of the trial court.'" Catawba Orchard Beach Assn., Inc. v.Basinger (1996), 115 Ohio App.3d 402, 407, quoting FarrowRestoration, Inc. v. Kowalski (1991), 81 Ohio App.3d 54, 57. Thus, a reviewing court will not reverse the ruling of the lower court absent an abuse of that discretion. A trial court abuses its discretion when the result is "so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." Nakoff v. Fairview Gen. Hosp. (1996),75 Ohio St.3d 254, 256.
 {¶ 7} In the case sub judice, the primary contention between the parties is whether the Ostings had a valid variance for the restrictive covenants of the subdivision, which would permit the operation of Clayton's law office and the erection of a sign. The restrictive covenants at issue are as follows:
1. Said lots shall be used for residence purposes only, andshall not be used for any trade, business or industrial purposes,except for home workshops and home greenhouses incidental to theresidential use.
 * * * 9. No nuisance, advertising signs, billboards and/oradvertising devices except such as pertain to the sale of landupon which said sign is located shall be permitted on saidlots[.]
 * * * 16. Any variance must be approved by the grantors, James R.and Jean Grothause, their successors or assigns.
 17. These restrictions, covenants and conditions shall runwith the land and shall [sic] binding on all future owners ofall building sites, and all person [sic] claiming under themuntil January 2010 after which time said covenants, conditions,and restriction shall be automatically extended for successiveperiods of ten years each; provided that the owners of athree-fourths majority of the building sites may, in writing,change, modify, alter, amend or annul any of the otherrestrictions, reservations or condition at any time.
 18. These covenants shall be enforceable by injunction andotherwise by the grantor its successors or assigns.
When the Ostings decided to purchase the land, they signed a purchase agreement that contained exceptions to these restrictions, as well as other restrictive covenants of the subdivision that are not at issue in the current dispute. These restrictions were also contained in the deed to the property. The relevant exceptions read as follows:
Allowance for the following modifications of therestrictions:
 1. It is understood that Buyer is attorney and may operate lawpractice consistent with City Zoning and from residence.
 * * * 9. A sign is permissible according to regulation of City ofDelphos.
 * * * 16. These variances are approved by the grantors by theirsignatures to this instrument.
 {¶ 8} It could be argued at the outset that any plat restriction purporting to permit individual "variances" and/or "exceptions" to the remaining recorded plat restrictions, to be created within each deed at the sole discretion of the developer/grantor, should be void ab initio: (1) for possibly nullifying the restrictions and (2) for undermining the public policy behind the notice and recording statutes by requiring examination of every individual deed in the subdivision to ascertain what, if any, restrictions actually apply or have been waived for each lot. However, neither party to this case has argued this point or presented any authority to support this position. In fact, in response to direct questioning from the court, neither party embraced the concept in oral argument, seeming to concede that there was no authority or other basis in their experience as counsel for finding such a provision void.
 {¶ 9} Moreover, we have found no independent authority to indicate that such a provision is void as a matter of law, and of course, the "waiver" provision is specifically set forth in the recorded plat restrictions, thereby providing public notice to anyone that examination of individual deeds may be necessary to fully ascertain the restrictions applicable to any given lot within the subdivision. Accordingly, there being no basis for striking what is, in our view, an exceptionally inadvisable practice, we are bound to proceed to examine and interpret, as the trial court did, the specific language of the "waiver" provision and its applicability to this case.
 {¶ 10} The appellants first maintain that the Grothauses did not have the authority to grant these variances because the variances required the approval of the Grothauses and all the successors and assigns to the subdivision, i.e. everyone who purchased the lots from the Grothauses, which both sides agree was never obtained. The appellants base this assertion on the language employed in paragraph sixteen of the restrictive covenants for the subdivision. However, we disagree with this contention.
 {¶ 11} The Supreme Court of Ohio has consistently held that "[w]here the language contained in a deed restriction is indefinite, doubtful and capable of contradictory interpretation, that construction must be adopted which least restricts the free use of the land" Houk v. Ross (1973), 34 Ohio St.2d 77, paragraph two of the syllabus, overruled on other grounds byMarshall v. Aaron (1984), 15 Ohio St.3d 48. "Where the language in the restriction is clear, the court must enforce the restriction. Otherwise, the court would be rewriting the restriction. * * * The key issue is to determine the intent of the parties as reflected by the language used in the restriction." Dean v. Nugent Canal Yacht Club, Inc. (1990),66 Ohio App.3d 471, 475.
 {¶ 12} Paragraph sixteen of the restrictions allows a variance to be granted by James R. and Jean Grothause, their successors, or assigns. During his deposition, Appellant Rickie Miller admitted that James Grothause, who all parties admitted was the one who negotiated the various sales of the lots in the development, was willing to do everything that he could to sell those lots. In addition, all the parties agreed that they were aware of the nineteen restrictive covenants for the subdivision, including paragraph sixteen. The evidence further revealed that several discussions occurred between the Ostings and James Grothause regarding the purchase of lots 1205 and 1206. During these negotiations, the fact that Clayton was an attorney and wanted to operate his law practice from his home was discussed and the variances were provided by the Grothauses. Thus, the trial court did not err in concluding that the language of the restrictions and the intentions of the parties included the ability of the Grothauses to grant variances upon selling these lots within the subdivision without the need to obtain the consent of anyone else.
 {¶ 13} The fact that this paragraph included the use of the word "or" further indicates that the Grothauses could grant variances, as could their successors and assigns to the development, independent of one another, rather than requiring the approval of the Grothauses and everyone else who qualified as a successor and/or assign. Therefore, the trial court properly found that a valid variance had been granted for the use of lots 1205 and 1206 in the Heritage Meadows subdivision.
 {¶ 14} Nevertheless, the appellants further contend that this variance was only granted to Susan Osting, who was not an attorney, because she was the only grantee listed on the deed. We disagree. The variance does not read that it is understood that the grantee is an attorney, such that only Susan could operate a law office. To the contrary, the variance on the deed states that "[i]t is understood that Buyer is attorney and may operate law practice consistent with City Zoning and from residence." (Emphasis added.) The evidence revealed that the purchase agreement was signed by both Clayton and Susan and listed them both as the buyers of these lots. The evidence further revealed that the Ostings were married at the time of the transfer of the deed, that they shared the home that they built in the subdivision, and that several discussions took place between the Ostings and James Grothause regarding Clayton being an attorney and wanting to have a law office in his and Susan's home in the Heritage Meadows Subdivision. Given these facts, the variance for the law office and the sign, which indicated the location of the law office, applied to Clayton, one of the buyers, to operate his office out of the Osting home and was never intended to apply solely to Susan, who was also a buyer as well as grantee.
 {¶ 15} For these reasons, the trial court did not err in upholding the variances and refusing to grant an injunction to prevent the operation of the law office and the erection of a sign. Therefore, all four assignments of error asserted by the appellants are overruled. Our inquiry does not end here, however.
 {¶ 16} The Ostings also filed a cross-appeal, and now assert three cross-assignments of error. In the first two assignments of error, the Ostings contend that the trial court erred in construing the terms of the variances. Essentially, these two cross-assignments of error assert that the trial court issued an advisory opinion as to the ability of the Ostings to assign or expand the use of the residence as a law office to allow for more attorneys or different owners. We disagree.
 {¶ 17} In this case, the trial court was called upon to determine whether the operation of the law office and the erection of the sign should be enjoined. In order to make this determination, the trial court had to deduce what actions were prohibited and what actions were permissible. In short, the court had to determine the substance of the variance, as well as its validity, which it properly did. Therefore, the first and second cross-assignments of error of the Ostings are overruled.
 {¶ 18} Lastly, the Ostings assert in their third assignment of error that the trial court erred in denying their motion to join Jean Grothause[2] as a party by permitting them to amend their answer to include a third party complaint against her. The Ostings filed a motion for leave to file an amended answer with third party complaint. This motion was granted on July 3, 2002. However, the appellants filed a motion for reconsideration on July 8, 2002, asserting that they were not afforded the opportunity to respond to it prior to the court's ruling. The court granted the reconsideration and denied the Ostings' request for leave to amend their answer with a third party complaint. The Ostings now assert that the trial court erred in not permitting them to file a third party complaint. However, the liability of a third-party arises from a plaintiff's successful prosecution of the action against the defendant/third-party plaintiff. See Renacci v. Martell (1993),91 Ohio App.3d 217, 221. Therefore, this assignment of error is moot given the fact that the appellants were unsuccessful against the Ostings. Thus, the third assignment of error is, likewise, overruled.
 {¶ 19} For these reasons, the judgment of the Common Pleas Court of Allen County, Ohio, is affirmed.
Judgment affirmed.
Cupp, J., concurs.
Bryant, P.J., concurs in judgment only.
[1] The language at issue in this case refers to "variances" to the restrictive covenants of a development. However, this term is used by the parties interchangeably with the term "exceptions." Because the word "variance" is the exact term used in the restriction, we elect to use that term in this opinion.
[2] At the time this action was commenced, James Grothause was deceased.