[Cite as *McGiffin v. Skurich*, 2021-Ohio-2741.]

# IN THE COURT OF APPEALS OF OHIO
## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY


TIMOTHY MCGIFFIN, ET AL.,

      PLAINTIFFS-APPELLANTS/
      CROSS-APPELLEES,

  v.

MATTHEW SKURICH, ET AL.,

      DEFENDANTS-APPELLEES/
      CROSS-APPELLANTS.

CASE NO. 20 MA 0076

O P I N I O N

---

**Appeal from Mahoning County Common Pleas Court
Trial Court No. 2017 CV 2300**

**Judgment Affirmed**

**Date of Decision:  August 4, 2021**

---

**APPEARANCES:**

> *Glenn R. Osborne* and *T. Scott Kamenitsa, Jr.* for Appellants/
> Cross Appellees
>
> *Thomas F. Hull, II* and *Martha L. Bushey* for Appellees
> /Cross-Appellants

**WILLAMOWSKI, P.J.**

{¶1} Plaintiffs-appellants, cross-appellees Tim McGiffin and Lisa McGiffin (collectively "the McGiffins") appeal the judgment of the Mahoning County Court of Common Pleas. This suit began when the McGiffins filed a complaint alleging that the defendants-appellees, cross-appellants Dr. Matthew Skurich and Dr. Ruth Skurich (collectively "the Skuriches") intended to build a house in the Catarina Place residential development ("Catarina Place") that violated the deed restrictions governing that subdivision.

{¶2} On appeal, the McGiffins allege that the trial court erred in determining (1) that a deed restriction requiring design plans to be submitted to the Design Review Committee ("DRC") of the homeowners' association ("HOA") for approval could not be enforced in the absence of an HOA; (2) that Skuriches did not need to submit their design plans to the DRC of an HOA that was formed after the initiation of this suit; and (3) that the Skuriches' design plans complied with the deed restrictions.

{¶3} The Skuriches allege that the trial court erred (1) in determining that the McGiffins' residence and shed were built in compliance with the deed restrictions; (2) in finding for the McGiffins on the Skuriches' abuse of process claim; and (3) in constructively overruling the Skuriches objections to the magistrate's decision to grant the McGiffins' request for a temporary restraining order. For the reasons set forth below, the judgment of the trial court is affirmed.

Case No. 20 MA 0076

*Facts and Procedural History*

{¶4} Paolo Ricottilli ("Ricottilli") was the President of the Ricottilli Construction Company, Inc. ("Ricottilli Construction"). Doc. 72, Ex. A. In 2004, Ricottilli Construction began to develop a residential subdivision called Catarina Place in Poland Township, Mahoning County, Ohio. Doc. 1, Ex. A. Doc. 72. On September 15, 2004, Ricottilli Construction recorded a Declaration of Covenants, Conditions, and Restrictions/Building Guidelines ("Declaration of Covenants") for Catarina Place. Doc. 72, Ex. A.

{¶5} This Declaration of Covenants contained several provisions that governed the process of reviewing design plans for proposed builds in Catarina Place:

**2.1 Required Submissions**

**All plans for improvements, including building design, site plan, landscape plan and color combinations must be submitted for approval of a Design Review Board [("DRB")], as provided for herein prior to commencement of construction.**

**\* \* \***

**2.3 Design Review Board**

**Initially, the Design Review Board shall consist of the Developer, who shall have exclusive right of approval during the Development Period, or until such time as the Developer relinquishes all or part of said right to the [Homeowners'] Association. Notwithstanding, said right of approval shall become the sole responsibility of the Association 10 years from the recording of this Document, or when 80% of the lots are sold, whichever occurs first. At such ti[m]e as the design review**

-3-

**function become[s] the responsibility of the Association, the Association shall establish a Design Review Committee made up of 5 members to govern such issues, as provided for in the By-laws of the Association. At no time shall either the Developer or the Association approve such plans which are in violation of the basic design requirement[s] as provided for herein.**

Doc. 72, Ex. A. Further, the DRB had "the right to decide that a variance from the Design Guidelines is slight and inconsequential and will have minimal effect on the overall appearance of the community." Doc. 72, Ex. A.

{¶6} The Declaration of Covenants also contained building restrictions and guidelines. Doc. 72, Ex. A. The houses in Catarina Place were required to have an attached garage that was "designed for not less than two (2), nor more than four (4) vehicles." Doc. 72, Ex. A. The Declaration of Covenants also contained a general prohibition against unattached buildings, stating that "[e]xtra storage must be attached and part of the main structure on the property." Doc. 72, Ex. A.

{¶7} In 2013, Ricottilli Construction built a house and a detached storage shed for the McGiffins' in Catarina Place. Doc. 72. Subsequently, the Skuriches purchased a vacant lot in Catarina Place that is adjacent to the McGiffins' residence. Doc. 72. In 2017, the Skuriches began taking steps towards building a house on this lot. Doc. 4, Ex. A. After reviewing the original design plans ("Original Plans") for the Skuriches' house, Poland Township issued a zoning permit to the Skuriches in July of 2017. Doc. 4, Ex. A. Doc. 72.

{¶8} The Skuriches' Original Plans included a two-story structure ("the storage unit") that was situated behind the main residence. Doc. 4, Ex. A-3. The first story of the storage unit was a two-car garage. Doc. 4, Ex. A-3. The second story of the storage unit contained a storage area. Doc. 4, A-3. A breezeway connected the storage unit to the main residence by "both a foundation and a roof * * *." Doc. 84. *See* Doc. 4, Ex. A. In addition to the two-car garage in the storage unit, the main residence had a garage with spaces for three cars. Doc. 4, Ex. A-3. Thus, the Original Plans depicted garage space for a total of five vehicles. Doc. 4, A-3.

{¶9} On August 31, 2017, the McGiffins filed a complaint against the Skuriches. Doc. 1. The complaint alleged Skuriches planned to build a house that violated the restrictions in the Declaration of Covenants. Doc. 1. The complaint requested a declaratory order that stated the proposed storage unit violated the Declaration of Covenants and a permanent injunction that would enjoin the Skuriches from building the proposed storage unit. Doc. 1. The McGiffins also filed a motion that requested a temporary restraining order that would stop construction of the proposed storage unit. Doc. 2.

{¶10} On September 11, 2017, the Skuriches filed a motion to oppose the McGiffins' motion for a temporary restraining order. Doc. 4. Dr. Matthew Skurich submitted an affidavit with this motion that included the following representations:

**2. In designing our dream home, we worked closely with Poland Township Zoning and substantially adapted our original vision for the home to accommodate the McGiffins' concerns and to ensure that this area of the home * * * [the storage unit] is 'attached' to the house and, therefore, in full compliance with all zoning and deed restrictions. We plan to use this part of the house for storage of our large collection of toys, not as a second living space or any other purpose that would violate any other deed restrictions.**

**3. In consultation with Poland Township, we were informed that the structure would be considered 'attached' to the house and not detached, as long as it is connected through the roof and foundation. * * * Based on Poland Township's representations * * *, we had the drawings for our house redone to connect the garage/storage area both through the roof and the foundation to ensure it was considered 'attached' to the main structure. * * * This extension of the house is clearly attached at the roof and foundation as required by Poland Township and it is also architecturally cohesive with the house.**

Doc. 4, Ex. A.

{¶11} On October 5, 2017, the magistrate issued a temporary restraining order as requested by the McGiffins. Doc. 9. This temporary restraining order was set to expire after fourteen days. Doc. 9. This order also scheduled a preliminary injunction hearing for October 17, 2017. Doc. 9. On October 11, 2017, the parties filed a motion with the trial court that requested the upcoming hearing be converted into a status hearing. Doc. 11. This request was made to give the parties more time "to see if a mutually acceptable redesign of the Skuriches' home [could] be found." Doc. 11. The trial court granted this motion and extended the temporary restraining order to October 31, 2017. Doc. 13.

-6-

{¶12} During the settlement negotiations, the Skuriches adjusted the Original Plans for their house. The Skuriches "remove[d] one of the garage spaces, reducing the total garage spaces to four." Doc. 84. The Skuriches also "replace[d] the breezeway with a fully-enclosed area that makes the four car spaces one continuous space." Doc. 84. The settlement negotiations produced a revised set of design plans ("Revised Plans") for the Skuriches' house but did not yield an agreement between the McGiffins and the Skuriches. *See* Doc. 23, Ex. A. Doc. 67.

{¶13} On April 24, 2018, the Skuriches filed an answer and counterclaims.[1] Doc. 21, 25. The Skuriches alleged that the McGiffins had a detached shed on their property in violation of the restrictions in the Declaration of Covenants and that the location of the McGiffins' house was not in compliance with the setback requirements in the Declaration of Covenants. *See* Doc. 44. On the basis of these allegations, the Skuriches requested a declaratory judgment and a permanent injunction. Doc. 44. The Skuriches also raised an abuse of process claim against the McGiffins. *See* Doc. 30, 66.

{¶14} In response, the McGiffins produced a document titled "An Amendment to the Declaration of Covenants" ("Amendment"). Doc. 47, Ex. 1.

---

[1] Their answer and counterclaims were attached to a motion that requested leave to file an answer and counterclaim. Doc. 21. The Skuriches stated that "an Answer and Counterclaims had not been filed previously * * * because all parties believed they had this matter settled in principal prior to the due date of responsive pleadings. Doc. 21. The Skuriches also stated that settlement negotiations "ha[d] broken down" and that the counterclaims were based on newly discovered information. Doc. 21. The trial court granted the Skuriches request for leave on June 5, 2018. Doc. 25.

This Amendment was dated November 20, 2006 and reads, in its relevant part, as follows:

> **4.12 Unattached Buildings**
>
> **One storage shed of a reasonable size and of reasonable construction shall be allowed per lot in the Development. It shall be in the sole discretion of the Design Review Board as to the reasonableness of size and construction. The Design Review Board must approve, in writing, the size, style, type of construction, and placement of said storage shed on the lot prior to said storage shed's construction. \* \* \***

Doc. 72, Ex. D. This Amendment states that it was created in compliance with the terms of the Declaration of Covenants. Doc. 72, Ex. D. However, this copy of the Amendment only contained the signatures of two homeowners from Catarina Place. Doc. 72, Ex. D. Further, it was "never recorded and no versions are known to exist with any additional signatures on it." Doc. 72.

{¶15} On January 29, 2019, articles of incorporation were filed to form the Catarina Place Homeowners Association, Inc. ("CPHOA"). Doc. 44, Ex. A-5. Before this time, Catarina Place had no HOA. Doc. 72. On February 12, 2019, Dr. Matthew Skurich filed an affidavit that stated the following:

> **Our original build was approved by the Builder/Developer Ricottilli Construction Company, Inc. and the Poland Township Zoning Board in mid-2017 and we were on the verge of building when the Magistrate issued the TRO. Almost seventeen months after this lawsuit was filed, a Home Owners Association for the Catarina Place Development was finally officially formed. According to the Articles of Incorporation \* \* \*, the HOA was officially filed on 1/29/19. It would be unjust if after litigating this case we now have to get approval from an organization that did**

**not even exist until a little over one week ago. The revised plan has only minor alterations to the original plan to comply with the restrictions and has no structural or aesthetic changes that would or should merit wholesale review by the new body.**

Doc. 44, Ex. A. By the end of February, the CPHOA had formed a DRC to carry out the functions of the DRB. Doc. 47, Ex. 3. Doc. 72. On March 13, 2019, an attorney representing the CPHOA sent a letter to the Skuriches' attorney. Doc. 47, Ex. 3. This letter stated that the Skuriches needed to submit their building plans to the DRC of the CPHOA for approval before they began construction on their house. Doc. 47, Ex. 3.

{¶16} On July 23, 2019, the parties filed agreed upon stipulations to the trial court. Doc. 72. The fifth stipulation in this document read as follows: "Drawings and elevations for the home the Skuriches currently wish to build on the lot are attached hereto as Ex. B." Doc. 72. The Revised Plans were attached to this filing as "Exhibit B." Doc. 72, Ex. B. The Skuriches argued that the Revised Plans were in full compliance with the Declaration of Covenants. Doc. 66.

{¶17} On June 19, 2020, the trial court rendered a decision in this matter. Doc. 84. The trial court found "in favor of the Skuriches on all counts of the McGiffin[s'] Complaint" and "in favor of the McGiffin[]s on all Counts of the Skurich[es'] Complaint * * *." Doc. 84. The trial court determined that "the Skuriches may proceed to build their home in accordance with the [Revised P]lans set forth in Stipulated Exhibit B." Doc. 84. Finally, the trial court ordered Ricottilli

to "record[] the 2006 Amendment to the Declaration of Covenants addressing sheds within 30 days of the date of this Entry." Doc. 84.

{¶18} The McGiffins filed their notice of appeal on July 17, 2020. Doc. 86. On appeal, the McGiffins raise the following three assignments of error:

### Appellants' First Assignment of Error

**The trial court erred when it ruled that the procedural requirement in the deed restrictions, specifically relating to the Design Review Committee (DRC) approval, are not enforceable against the Skuriches.**

### Appellants' Second Assignment of Error

**The trial court erred when it ruled that the Skuriches['] design plans did not need to be reviewed by the Design Review Committee formed in 2019.**

### Appellants' Third Assignment of Error

**The trial court erred when it ruled that the Skuriches['] proposed build did not violate specific deed restrictions.**

On July 27, 2020, the Skuriches filed their notice of cross-appeal. The Skuriches raise the following three cross-assignments of error:

### Cross-Appellants' First Assignment of Error

**The trial court erred in finding that the McGiffins' residence and shed are not in violation of the Declaration of Covenants.**

### Cross-Appellants' Second Assignment of Error

**Assuming, *arguendo*, that the trial court intended to render judgment in favor of the McGiffins on the Skuriches' abuse of process claim via its June 19, 2020 Judgment Entry, the trial court erred in doing so.**

**Cross-Appellants' Third Assignment of Error**

**The trial court erred in constructively overruling the Skuriches' Motion to Set Aside Magistrate's Order and/or Objections to the October 5, 2017 Magistrate's Decision granting the McGiffins' Motion for a Temporary Restraining Order.**

We will consider the assignments of error raised by the McGiffins before we consider the cross-assignments of error raised by the Skuriches.

*First and Second Assignments of Error*

{¶19} For the sake of analytical clarity, we will consider the McGiffins' first and second assignments of error in one analysis. The McGiffins argue that the trial court erred in determining that the provision in the Declaration of Covenants that required design plans to be submitted to the DRC of an HOA was unenforceable. The McGiffins argue that this provision is enforceable because the CPHOA was formed in 2019 and that the Skuriches should be required to submit their design plans to the DRC of the CPHOA.

Legal Standard

{¶20} "The construction of written contracts and instruments, including deeds, is a matter of law." *Long Beach Assn., Inc. v. Jones*, 82 Ohio St.3d 574, 576, 1998-Ohio-186, 697 N.E.2d 208, 209 (1998). *See Siltstone Resources, LLC v. Ohio Public Works Commission*, 2019-Ohio-4916, 137 N.E.3d 144, ¶ 29 (7th Dist.) (holding that "[c]ontract construction rules apply to the interpretation of the deed restrictions"). "Questions of law are reviewed de novo." *Jones* at 576. Under a de

novo review, an appellate court may interpret the language of the contract substituting its interpretation for that of the trial court. *Siltstone Resources* at ¶ 29. "Contract construction rules apply to the interpretation of the deed restrictions." *Id.*

{¶21} "When interpreting a deed, the primary goal of this court is to give effect to the intentions of the parties." *LRC Realty, Inc. v. B.E.B. Properties*, 160 Ohio St.3d 218, 2020-Ohio-3196, 155 N.E.3d 852, ¶ 17. "The best way to do that is to look at the words found within the four corners of the deed itself and to adhere to the plain language used there." *Id.* "Where the language in the restriction is clear, the court must enforce the restriction. Otherwise, the court would be rewriting the restriction." *Clark v. Osting*, 3d Dist. Allen No. 1-03-17, 2004-Ohio-98, ¶ 11, quoting *Dean v. Nugent Canal Yacht Club, Inc.*, 66 Ohio App.3d 471, 475, 585 N.E.2d 554, 557 (6th Dist. 1990).

{¶22} "A 'restrictive covenant' is a 'private agreement, usu[ally] in a deed or lease, that restricts the use or occupancy of real property, esp[ecially] by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put.'" *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶ 28 (2002), quoting Black's Law Dictionary 371 (7th Ed. Rev. 1999). "Restrictive covenants are often utilized to effect a general plan for a development." *Dillingham v. Do*, 12th Dist. Butler Nos. CA2002-01-004, CA2002-01-017, 2002-Ohio-3349, ¶ 16. "An owner of land is free to adopt a general building plan for a

development, designed to make it more attractive for residential purposes." *Id*. at ¶ 10.

**{¶23}** However, "[o]ur legal system does not favor restrictions on the use of property." *Driscoll v. Austintown Associates*, 42 Ohio St.2d 263, 276, 328 N.E.2d 395 (1975). Thus, the Ohio Supreme Court has held that

> **[d]eed restrictions are generally disfavored and will be 'strictly construed against limitations upon * * * use, and * * * all doubts should be resolved against a possible construction thereof which would increase the restriction upon the use of such real estate.'**

*Cincinnati City School Dist. Bd. of Edn. v. Conners*, 132 Ohio St.3d 468, 2012-Ohio-2447, 974 N.E.2d 78, ¶ 20, quoting *Loblaw, Inc. v. Warren Plaza, Inc*., 163 Ohio St. 581, 127 N.E.2d 754 (1955), paragraph two of the syllabus.

Legal Analysis

**{¶24}** The Declaration of Covenants for Catarina Place contains the following relevant provisions:

**2.1 Required Submission**

**All plans for Improvements, including building designs, site plan, landscape plan and color combinations must be submitted for approval of a Design Review Board, as provided for herein prior to commencement of construction.**

**\* \* \***

**2.3 Design Review Board**

**Initially, the Design Review Board shall consist of the Developer, who shall have exclusive right of approval during the Development Period, or until such time as the Developer**

> **relinquishes all or part of said right to the Association. Notwithstanding, said right of approval shall become the sole responsibility of the Association 10 years from the recording of this Document, or when 80% of the lots are sold, whichever occurs first. At such tine [sic] as the design review function become [sic] the responsibility of the Association, the Association shall establish a Design Review Committee made up of 5 members to govern such issues, as provided for in the By-laws of the Association. At no time shall either the Developer or the Association approve such plans which are in violation of basic design requirement as provided for herein.**

Doc. 72, Ex. A. Since the Declaration of Covenants was recorded on September 15, 2004, a DRC of the HOA for Catarina Place was to assume the responsibilities of the DRB in 2014. Doc. 72, Ex. A.

{¶25} However, "[a] formal Homeowners' Association was not formed for the Catarina Place until January of 2019. The Design Review Committee was also formed at the same time." Doc. 72. Thus, no DRC or HOA existed at the time that the Skuriches began the process of building their house in 2017. Doc. 72. In between 2014 and 2017, "[s]everal homes were constructed in the Catarina Place Development * * *." Doc. 72.

> **Palo Ricotilli [sic], an owner of Ricotilli [sic] Construction, testified at his deposition that he reviewed and approved the Skuriches' proposed build, and that he believed that, on behalf of Ricotilli [sic] Construction, he had authority to approve it as [the] acting Design Review Committee for the Catarina Place Development. The McGiffins disagree with Palo Ricotilli's [sic] assessment, based on paragraph 2.3 of the [Declaration of Covenants] * * *.**

Doc. 72. Further, the Skuriches also "obtained a permit from Poland Zoning to build." Doc. 72. The McGiffins and Skuriches disagree as to whether this permit is relevant to this action. Doc. 72.

{¶26} After reviewing these facts, the trial court concluded that the provision in the Declaration of Covenants that required design plans to be submitted to DRC of the HOA was not enforceable. Doc. 84. On appeal, the McGiffins assert that this provision is enforceable and that the Skuriches should be required to submit their building plans to the DRC of the CPHOA, which was formed in 2019. Doc. 72. In determining whether this provision is enforceable against the Skuriches, we have found two cases from our sister districts to be informative.

{¶27} In *Garvin v. Cull*, the Eleventh District Court of Appeals considered a case in which homeowners ("defendants") erected a fence after obtaining a permit from their local building department. *Garvin v. Cull*, 11th Dist. Lake No. 2005-L-145, 2006-Ohio-5166, ¶ 3. The applicable declaration of restrictions for this subdivision required homeowners to seek the approval of their HOA before erecting a fence. *Id*. at ¶ 6. However, no such HOA existed at the time the defendants built this fence. *Id*. at ¶ 17. The defendants' neighbors ("plaintiffs") filed a suit, alleging that the defendants' fence was not in compliance with the deed restrictions because the fence had not been approved by the HOA. *Id*. at ¶ 3, 12.

{¶28} The trial court found that "the deed restrictions that required prior approval of fences by the homeowners' association or its architectural committee

[were] unenforceable against the [defendants.]" *Garvin* at ¶ 14. On appeal, the Eleventh District noted that

> **there was no Association, or any approval committee, in existence or otherwise operating, at the time the subject fence was erected in July 2004. It follows that there was no entity that the [defendant] could apply to for approval of the fence.**

*Id*. at ¶ 17. The Eleventh District determined that the plaintiffs could sue to enforce deed restrictions as members of the subdivision. *Id*. at ¶ 23. However, the plaintiffs could not act as the HOA or architectural committee when the deed restrictions did not give them any authority to act in such a capacity. *Id*. The Eleventh District then concluded that the provision requiring fences to be approved by the HOA was unenforceable in this situation. *Id*.

{¶29} In *Barbato v. Shundry*, the Fifth District Court of Appeals considered a case in which homeowners ("defendants") sought to build a detached garage after obtaining zoning approval from the township. *Barbato v. Shundry*, 5th Dist. Stark No. CA-8451, 1991 WL 115949, *3 (June 10, 1991). The defendants' property was subject to a deed restriction that required plans for buildings to be submitted to the grantor for approval before construction. *Id*. The defendants' neighbors ("plaintiffs") sued to prevent the construction of this detached garage. *Id*. at *4. The trial court found for the defendants. *Id*. at *1.

{¶30} On appeal, the plaintiffs argued that, as property owners, "they [had] standing to enforce restrictive covenants even if the grantor has refused, arbitrarily

or not, to enforce them." *Barbato* at *2. The Fifth District disagreed, finding that the deed restriction that required homeowners to have their proposed building plans reviewed was not enforceable by the plaintiffs

> **because the rejection procedure no longer exists. A property owner cannot unilaterally and arbitrarily assume that authority, however capable he is of enforcing a clear cut restriction that requires no aesthetic or other judgment.**

*Id*. at *2. Since "no entity [was] available to reasonably exercise the authority to disapprove of the proposed garage," the Fifth District concluded that the trial court did not err in denying the plaintiffs an injunction to enjoin the defendants from building their detached garage. *Id*. at *1-2, 6.

{¶31} Turning to the facts of the case before this Court, the functions of the DRB were supposed to move from Ricottilli Construction to the DRC of an HOA in 2014 pursuant to Section 2.3 of the Declaration of Covenants. Doc. 72, Ex. A. Since no HOA was formed in 2014, Ricottilli, as the developer, appears to have continued to carry out the functions of the DRB. The record indicates that a number of houses were built in Catarina Place in between 2014 and 2017 in the absence of an HOA with a DRC that could serve as a DRB. Doc. 72.

{¶32} As the Skuriches were seeking to build their house in 2017, they submitted the Original Plans to Ricottilli for review in accordance with the prevailing practice of that time. The Skuriches could not submit the Original Plans to the DRC of an HOA that did not exist. In his capacity as developer and in the

absence of an HOA, Ricottilli reviewed the Original Plans for the Skuriches' house. Ricottilli testified that he approved the Skuriches' design plans in 2017, "believ[ing] that, on behalf of Ricotili [sic] Construction, he had authority to approve it as acting Design Review Committee for the Catarina Place Development." Doc. 72. Thus, the Original Plans went through the same approval process that every other existing house in Catarina Place had gone through by that point in time. Doc. 84.

{¶33} Further, the record also indicates that the Skuriches submitted the Original Plans to the local authorities in Poland Township for review. Doc. 4, Ex. A. Doc. 47, Ex. 1. Doc. 72. Poland Township informed the Skuriches that their storage unit was an attached structure as it was connected to the main residence "through the roof and foundation." Doc. 4, Ex. A. The Skuriches were then issued a zoning permit from Poland Township. Doc. 72. *See Garvin, supra*, at ¶ 2; *Barbato, supra*, at *3.

{¶34} When the McGiffins initiated this suit, the Skuriches' Original Plans had already been approved by Ricottilli, having gone through the design review process as it existed in between 2014 and 2017. The trial court, in its judgment entry, explained the problems that could arise from finding that the design review process, as it prevailed in between 2014 and 2017, is invalid:

> **[This] would be to find that the several other homes built between October 2014 and June of 2019 were all built in violation of the Deed Restrictions and it would subject those homeowners to the possibility of having the validity of their homes put into question**

-18-

**in future lawsuits by Development residents. Such a finding would be unjust and extremely disruptive to the Development.**

Doc. 84. We also note that no HOA had been formed for Catarina Place by the time that the McGiffins had filed their complaint. Doc. 1, 72. Thus, even if the Skuriches had not already gone through the existing design review process with Ricottilli, they still could not have, at this point, submitted their Original Plans to the DRC of an HOA that did not exist.

{¶35} Section 3.4 of the Declaration of Covenants also gives the DRB the authority to reject design plans based on "aesthetic considerations." Doc. 72, Ex. A. This is exactly the type of authority that the Fifth District determined an individual homeowner could not "unilaterally and arbitrarily assume * * *" in *Barbato*. *Barbato, supra*, at *2. The design review process described in Section 3.4 is not a "clear cut restriction" and instead relies on "aesthetic or other judgment." *Id*. at *2. Thus, in the absence of an HOA, the procedures in Section 2.3 of the Declaration of Covenants that required an HOA with a DRC were not enforceable by the McGiffins as individual homeowners at the time that this suit was initiated. *See Garvin, supra*, at ¶ 17; *Barbato, supra*, at *2.

{¶36} Further, the subsequent creation of the CPHOA in 2019 did not render the requirement that plans be submitted to the DRC of an HOA in Section 2.3 of the Declaration of Covenants enforceable against the Skuriches. In this particular case, the Original Plans had already gone through the design review process as it existed

in between 2014 and 2017.[2]  To require the Skuriches to submit their design plans to the DRC of the CPHOA would be require them to go through a design review process two times.  Doc. 84.  We also note that the CPHOA was not formed until almost seventeen months after the McGiffins had initiated this suit.  Doc. 1.  Doc. 44, Ex. A.

**{¶37}** Next, the McGiffins point to the fact that the Original Plans were modified during the course of this litigation and argue that the Revised Plans need to be reviewed by the DRC of the CPHOA.  However, the trial court found that the Revised Plans did not include "major structural changes or any changes that materially affect the aesthetics of the already-approved design."  Doc. 84.  Thus, this litigation did not result in an entirely new set of building plans.  Instead, the Skuriches made a few minor modifications to the Original Plans to ensure full compliance with the Declaration of Covenants.[3]  Because only minor modifications were made to building plans that had already been approved by Ricottilli, the Skuriches do not need to start the entire design review process over again.

**{¶38}** For these reasons, we conclude that the provision in the Declaration of Covenants that requires design plans to be submitted to the DRC of an HOA is

---

[2] This does not mean that the provision requiring the DRC of an HOA to review design plans as the DRB is unenforceable in the future now that the CPHOA is in existence.  In this case, however, the CPHOA did not exist during the timeframe in which the Skuriches were going through the design review process.  Thus, this provision is unenforceable against the Skuriches in the case presently before us.  *See also* Doc. 84.

[3] We note that the trial court did not make a determination as to whether these modifications were necessary to bring the Original Plans into compliance with the Declaration of Covenants.  Doc. 84.  Instead, the trial court simply found that the Revised Plans were in compliance with the Declaration of Covenants.  Doc. 84.

unenforceable against the Skuriches under the facts of this case. The McGiffins cannot, therefore, compel the Skuriches to go through a second design review process with the DRC of the CPHOA.[4] As such, the McGiffins' first and second assignments of error are overruled.

*Third Assignment of Error*

**{¶39}** The McGiffins argue that the trial court erred in determining that the challenged design plans do not violate the specific deed restrictions.

Legal Standard

**{¶40}** We here reincorporate the legal standard set forth under the first and second assignments of error.

Legal Analysis

**{¶41}** During the course of this litigation, the McGiffins argued that the Skuriches' design plans violated Section 4.1 and Section 4.12 of the Declaration of Covenants. Doc. 72, Ex. A. These two provisions read as follows:

**4.1 General Building [R]equirements**

**No building shall be erected, placed, altered, or suffered to remain on any lot included in the said Plat other than (1) detached single family dwelling, not to exceed (2) stories in height with a private garage attached thereto, designed for not less than two (2), nor more than four (4) vehicles.**

---

[4] While we have found that the McGiffins could not compel the Skuriches to submit their Original Plans or Revised Plans to the DRC of the CPHOA in this case, this does not mean that the McGiffins, as individual homeowners, could not challenge aspects of the Original Plans or the Revised Plans as failing to conform to the "clear cut" restrictions in the Declaration of Covenants. *Barbato, supra*, at *2. In fact, such challenges are the subject of the McGiffins' third assignment of error.

\* \* \*

**4.12 Unattached Buildings**

**No unattached building or sheds of any type are allowed.  Extra storage must be attached and part of the main structure on the property.**

Doc. 72, Ex. A.  In its judgment entry, the trial court determined that Revised Plans submitted by the parties with the agreed stipulations as "Exhibit B" did not violate the restrictions in the Declaration of Covenants.  Doc. 84.  *See* Doc. 72, Ex. B.

{¶42} On appeal, the McGiffins argue that trial court erred in determining that the Revised Plans do not violate the deed restrictions.  As in the first two assignments of error, the McGiffins argue that the Skuriches are failing to comply with the the Declaration of Covenants.  However, unlike the restriction that was the subject of the first two assignments of error, Section 4.1 and Section 4.12 contain "clear cut restriction[s] that require[] no aesthetic or other judgment."  *Barbato, supra*, at \*2.  Further, the enforcement of Section 4.1 and Section 4.12 also do not rely on the existence of a formal HOA in 2017.  *See Garvin, supra*, at ¶ 23.

{¶43} As to the restriction in Section 4.1, the Original Plans emerged from the design review process with garage space for five cars.  Doc. 1, Ex. A.  Doc. 4, Ex. A-3.  *See* Doc. 72, Ex. F.  However, during the course of this litigation, the Skuriches modified their building plans and "remove[d] one of the garage spaces, reducing the total garage spaces to four."  Doc. 84.  *See* Doc. 72, Ex. B.  The evidence in the record indicates that the Skuriches' building plans are not designed

for more than four vehicles and are, thus, in compliance with Section 4.1. Doc. 72, Ex. B.

{¶44} The restriction in Section 4.12 states that "unattached building[s] or sheds" are not permitted and that "[e]xtra storage must be attached and part of the main structure on the property." Doc. 72, Ex. A. Thus, the question is whether the Skuriches' proposed storage unit is attached to the main residence. Poland Township defines "attachment" as follows: "a structural addition or alteration to a principal building by physically affixing it to the principal building with both a foundation and a roof * * *." Doc. 4, Ex. A-2. Doc. 84.

{¶45} In the Original Plans, a breezeway connected the storage unit and the main residence by "both a foundation and a roof." Doc. 84. Doc. 1, Ex. A. While the breezeway is converted into a "fully-enclosed area" in the Revised Plans, the storage unit and the main residence are still joined "by both a foundation and a roof." Doc. 84. Based on the definition from Poland Township, the trial court found that the storage unit was not an "unattached building." Doc. 84. The trial court also noted that Poland Township issued a building permit without "requir[ing] the Skuriches to obtain a variance and issued a zoning permit for the build." Doc. 84.

{¶46} Because the "fully-enclosed area" connects the storage unit to the main residence by roof and by foundation, the storage unit is attached to the main residence. Doc. 4, Ex. A-2. Doc. 84. As such, the storage unit is not an "unattached building." Doc. 72, Ex. A. For these reasons, the Revised Plans do not violate

Section 4.12 of the Declaration of Covenants. Doc. 72, Ex. A. Thus, in this appeal, the McGiffins have not identified a violation of Section 4.1 restrictions in the Skuriches' building plans.

{¶47} Finally, the McGiffins argue that the Skuriches have not submitted the final plans for their proposed build. However, in the agreed upon stipulations that were submitted to the trial court, the Skuriches attached a copy of the Revised Plans and indicated that these represented the house that they wished to build. Doc. 72, Ex. B. The trial court evaluated these Revised Plans, finding them to be in compliance with the Declaration of Covenants. Doc. 84. In its judgment entry, the trial court stated that "the Skuriches may proceed to build their home in accordance with the [Revised P]lans set forth in Exhibit B * * *." Doc. 84. Thus, the McGiffins' final argument is without merit.

{¶48} In conclusion, the Revised Plans submitted by the Skuriches indicate that the garage space in their house is not designed for less than two or more than four vehicles in compliance with Section 4.1. Further, the Revised Plans indicate that their storage unit will be attached to their main residence in compliance with Section 4.12. Thus, the McGiffins' have not demonstrated that the trial court erred in determining that the Skuriches' building plans complied with these restrictions in the Declaration of Covenants. As such, the McGiffins' third assignment of error is overruled.

Case No. 20 MA 0076

*First Cross-Assignment of Error*

{¶49} The Skuriches argue that the trial court erred in determining that the McGiffins' property complies with the restrictions in the Declaration of Covenants.

Legal Standard

{¶50} We here reincorporate the legal standard set forth under the McGiffins' first and second assignments of error.

Legal Analysis

{¶51} The Skuriches argue that the McGiffins' property does not conform to the restrictions in the Declaration of Covenants in two ways. First, they argue that the McGiffins' house is situated too close to the property line with the Skuriches in violation of the setback requirements in the Declaration of Covenants. Second, they assert that the McGiffins have a freestanding shed that violates the prohibition against detached structures in the Declaration of Covenants.

{¶52} The first argument alleges a violation of Section 4.4 of the Declaration of Covenants. This provision reads, in its relevant part, as follows:

**4.4 Front, Side and [R]ear Yard Requirements.**

**All buildings * * * shall be located within the Building Site and shall be in accordance with the building set-back lines, minimum side yard and rear lot line requirements as set forth in the Township of Poland Ordinances. * * * There shall be two (2) side yards with a total width of not less than twenty (20) feet. The width of the narrowest of the two (2) side yards shall not be less than ten (10) feet. * * ***

-25-

Doc. 72, Ex. A.[5]   During this litigation, Chamberlin Surveying examined the McGiffins' property and determined that their house is situated only 8.5 feet from their property line with the Skuriches.  Doc. 72, Ex. C.

{¶53} However, this fact does not, by itself, establish a violation of the Section 4.4 because Section 3.3 of the Declaration of Covenants states the following:

> **3.3 Inconsequential Items.**
>
> **The Design Guidelines have been designed to provide general standards for the approval of plans.  The Design Review Board shall have the right to decide that a variance from the Design Guidelines is slight and inconsequential and will have minimal effect on the overall appearance of the community.**

Doc. 72, Ex. A.  Since the McGiffins' house was built before 2014, there is no dispute that the developer, Ricottilli, was serving as the DRB pursuant to Section 2.3 of the Declaration of Covenants.  Doc. 72, Ex. A.  Further, the trial court noted that "Ricottilli testified that he sometimes built homes with slight variations from side yard set-back requirements as necessary during this time."  Doc. 84.  As such, Ricottilli testified that he believed the McGiffins' house did "not violate the Deed Restrictions."  Doc. 72.

{¶54} Based on these facts, we conclude that the location of the McGiffins' house does not violate Section 4.4. At the time the McGiffins' house was built, the

---

[5] The trial court found that "it is undisputed that the McGiffin[s'] home complies with the set-back requirements of Poland Township."  Doc. 84.  Thus, the Skuriches' argument is strictly about whether the McGiffins' house complies with the setback requirements specified in the Declaration of Covenants.

developer, as the DRB, had the authority to approve a variance from the general building guidelines that was "slight and inconsequential." Doc. 72, Ex. A. The record indicates that Ricottilli used this authority to approve minor alterations to the general setback requirements of Section 4.4 as he built houses in Catarina Place. Doc. 72, 84. Thus, the trial court did not err in determining that Ricottilli was within his authority to approve a 1.5-foot variance between the McGiffins' house and the Skuriches' property line and that the McGiffins' house did not violate Section 4.4 of the Declaration of Covenants. As such, the Skuriches' first argument herein is without merit.

{¶55} Next, the Skuriches argue that the McGiffins' have a shed on their property that violates Section 4.1 and Section 4.12 of the Declaration of Covenants. These two provisions read as follows:

**4.1 General Building [R]equirements**

**No building shall be erected, placed, altered, or suffered to remain on any lot included in the said Plat other than (1) detached single family dwelling, not to exceed (2) stories in height with a private garage attached thereto, designed for not less than two (2), nor more than four (4) vehicles.**

**\* \* \***

**4.12 Unattached Buildings**

**No unattached building or sheds of any type are allowed. Extra storage must be attached and part of the main structure on the property.**

Doc. 72, Ex. A. The McGiffins have a shed in their backyard that is not attached to the main structure on their property. Doc. 72.

{¶56} However, the parties to this action submitted a document that is entitled "Amendment to Declaration of Covenants" ("Amendment"). Doc. 72, Ex. D. This Amendment reads, in its relevant part, as follows:

> **The * * * DECLARATION OF COVENANTS * * * is hereby amended to read as follows:**
>
> **4.12 UNATTACHED BUILDINGS**
>
> **One storage shed of a reasonable size and of reasonable construction shall be allowed per lot in the Development. It shall be in the sole discretion of the Design Review Board as to the reasonableness of size and construction. The Design Review Board must approve, in writing, the size, style, type of construction and placement of said storage shed on the lot prior to said storage shed's construction. Failure to obtain such approval shall result in the removal of said shed at the owner's cost. * * * Should the Design Review Board find a violation of any of the above, or any other issue which is reasonable in nature relating to said shed, the owner shall have 14 days to cure the complaint, or the Design Review Board shall cause the shed to be removed at the owner's expense.**

Doc. 72, Ex. D. This amendment was dated November 20, 2006 but had not been recorded by the time that the McGiffins initiated the instant suit. Doc. 72. In between 2006 and the time of this suit, a number of homeowners in Catarina Place had erected sheds on their properties. Doc. 84.

{¶57} According to Ricottilli's testimony, he was aware of this Amendment and relied on its existence when he approved sheds for homeowners in Catarina

Place as the developer in control of the DRB.  Doc. 84.  We note that Section 7.7 of the Declaration of Covenants gives the developer the authority to make "adjustments and amendments * * *" to the Declaration of Covenants.  Doc. 72, Ex. A.  Section 7.7 reads, in relevant part, as follows:

> **The Developer, while in control of the Design Review Board, may, unilaterally and without notice, make such adjustments and amendments to this Declaration as may become necessary, in Developer's sole discretion, to allow for the orderly construction and progression of the Development * * *.**

Doc. 72, Ex. A.  There is no dispute that Ricottilli, as developer, controlled the DRB through 2014.  Doc. 72, Ex. A.  The record indicates that Ricottilli built the McGiffins' shed at the same time he constructed their house in 2013.  Doc. 72.  Further, the Skuriches do not allege that the McGiffins' shed does not comply with the specifications contained in the Amendment.  Doc. 84.  Given that Ricottilli relied on this Amendment when he was the developer in control of the DRB, we conclude that the trial court did not err in determining that the McGiffins' shed did not violate the Declaration of Covenants in consideration of the Amendment thereto.[6]  For these reasons, the Skuriches' first cross-assignment of error is overruled.

*Second Cross-Assignment of Error*

{¶58} The Skuriches argue that the facts of this case present a clear abuse of process claim against the McGiffins.

---

[6] The trial court determined that the failure to record this Amendment was a procedural defect that could be rectified by simply recording this Amendment.  Doc. 84.  Thus, the trial court ordered Ricottilli to record the Amendment within thirty days of the issuance of its judgment entry.  Doc. 84.

Legal Standard

**{¶59}** "Ohio law, like the English common law before it, has long recognized a right to recover in tort for the misuse of civil and criminal actions as a means of causing harm." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 297, 1994-Ohio-503, 626 N.E.2d 115, 117 (1994), quoting *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 144, 559 N.E.2d 732, 734 (1990). Abuse of process is a tort recognized in the State of Ohio that addresses such misuse of the legal process. *Id.* at 298. This claim

> **must initially be distinguished from malicious prosecution. The tort of abuse of process arises when one maliciously misuses legal process to accomplish some purpose not warranted by law. 1 American Jurisprudence 2d (1962) 250, Abuse of Process, Section 1. * * * Abuse of process does not lie for the wrongful bringing of an action, but for the improper use, or 'abuse,' of process.**

*Clermont Environmental Reclamation Co. v. Hancock*, 16 Ohio App.3d 9, 11, 474 N.E.2d 357, 361 (12th Dist. 1984).

> **The three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process.**

*Yaklevich* at paragraph one of the syllabus.

> **In order to establish the second element of abuse of process, "a claimant must show that one used process with an 'ulterior motive,' as the gist of [the] offense is found in the manner in which process is used. * * * There must also be shown a further act in the use of process not proper in the regular conduct of the**

proceeding." *Clermont Environmental Reclamation Co. v. Hancock*, **16 Ohio App.3d 9, 11, 474 N.E.2d 357 (12th Dist.1984). 'The gravamen of the misconduct for which the liability * * * is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish.' Restatement of the Law 2d, Torts, Section 682, Comment a. 'Ulterior purpose' or 'motive' has been interpreted as 'an attempt to gain an advantage outside the proceeding, such as payment of money or surrender of a claim, using the process itself as the threat.' *Wolfe v. Little*, 2nd Dist. No. 18718, 2001 WL 427408, \*10.**

*Thomason v. AT&T*, 7th Dist. Belmont No. 18 BE 0016, 2018-Ohio-4914, ¶ 31.

**"The key factor in an abuse-of-process lawsuit 'is whether an improper purpose was sought to be achieved by the use of a lawfully brought previous action.[']"** *Carson* **at ¶ 16, quoting** *Yaklevich*, **68 Ohio St.3d at 300. '[T]here is no liability [for abuse of process] where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.'** *Hershey v. Edelman*, **187 Ohio App.3d 400, 2010-Ohio-1992, [932 N.E.2d 386,] ¶ 41 (10th Dist.), quoting** *Yaklevich* **at 298, quoting Prosser & Keeton, The Law of Torts 898 (5th Ed.1984).**

*Turkoly v. Gentile*, 7th Dist. Mahoning No. 20 MA 0043, 2021-Ohio-965, ¶ 14.

Legal Analysis

**{¶60}** The Skuriches first argue that the judgment entry of the trial court was not a final appealable order because it did not specifically discuss the Skuriches' abuse of process claim. Doc. 84. However, in its judgment entry, the trial court clearly disposed of all claims, finding in favor of the McGiffins on the claims raised by the Skuriches and finding for the Skuriches on the claims raised by the McGiffins. Doc. 84. "A final order * * * is one disposing of the whole case or

some separate and distinct branch thereof." *Lantsberry v. Tilley Lamp Co.*, 27 Ohio St.2d 303, 272 N.E.2d 127 (1971). This judgment entry does not "leave[] issues unresolved [or] * * * contemplate[] further action * * *." *VIL Laser Sys., L.L.C. v. Shiloh Industries, Inc.*, 119 Ohio St.3d 354, 2008-Ohio-3920, 894 N.E.2d 303, ¶ 8. As such, this judgment entry is a final appealable order.

{¶61} Next, the Skuriches assert *arguendo* that the trial court erred in finding for the McGiffins on their abuse of process claim. We will focus our analysis on the second element of this claim. The Skuriches allege that the McGiffins perverted this proceeding to accomplish the improper or ulterior purpose of imposing their personal design preferences on the Skuriches. *Id.* In support of this claim, the Skuriches raise two main arguments that we will examine in turn.

{¶62} First, the Skuriches argue that the McGiffins used settlement negotiations to make demands that "were not based in law * * *." Cross-Appellants' Brief, 27. In general, settlement negotiations exist to provide adverse parties with an opportunity to find a mutually agreeable compromise that can bring their dispute to an end. *See Marks v. Allstate Ins. Co.*, 153 Ohio App.3d 378, 2003-Ohio-4043, 794 N.E.2d 129 (5th Dist.). The Ohio Supreme Court has held that

> **'[t]he law favors the resolution of controversies and uncertainties through compromise and settlement rather than through litigation. * * * The resolution of controversies * * * by means of compromise and settlement * * * results in a saving of time for the parties, the lawyers, and the courts, and it is thus advantageous to judicial administration, and, in turn, to government as a whole.'**

*Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 38, 285 N.E.2d 324, 325 (1972), quoting 15 American Jurisprudence 2d 938, Compromise and Settlement, Section 4.

{¶63} On appeal, the Skuriches have not identified any demands from the McGiffins that were not "directly tied to the litigation pending in the trial court." *Edward D. Jones & Co., L.P. v. Wentz*, 9th Dist. Summit No. 23535, 2007-Ohio-3237, ¶ 13 (rejecting the argument "that *any* settlement demand that goes beyond the relief requested in the complaint is a perversion of the legal process"). Given that public policy favors resolution of disputes through settlement negotiations, a conclusion that the kinds of requests made by the McGiffins during settlement negotiations amounts to "abuse of process is untenable." *Id.* at ¶ 14.

{¶64} Second, the Skuriches point to the McGiffins' decision to continue this action after the Skuriches had made modifications to the design plans as evidence of an ulterior motive. In this situation, when the settlement negotiations failed to yield a mutually agreeable compromise, the McGiffins moved forward with their legal action. The fact that settlement negotiations were not successful in producing a mutually agreeable compromise does not mean that the McGiffins engaged in abuse of process. The Ohio Supreme Court has held that "there is no liability [for abuse of process] where the defendant has done nothing more than carry out the process to its authorized conclusion * * *." *Yaklevich, supra*, at 298. Thus, the fact

that the McGiffins continued to press their legal claims does not suggest that they abused the legal process in this case. *Id.*

**{¶65}** Having examined the materials in the record, we conclude that the Skuriches did not produce evidence to establish the second element of their abuse of process claim. For this reason, the trial court did not err in finding for the McGiffins in this matter. Since the Skuriches failed to carry the burden of demonstrating that the McGiffins acted with an ulterior motive, their second cross-assignment of error is overruled.

### Third Cross-Assignment of Error

**{¶66}** The Skuriches argue that the trial court erred in constructively overruling their objections to the magistrate's decision granting the McGiffins' motion for a temporary restraining order.

### Legal Standard

**{¶67}** "The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Miner v. Witt*, 82 Ohio St. 237, 92 N.E. 21 (1910), quoting *Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895). Thus, "[t]he mootness doctrine provides [that] 'American courts will not decide * * * cases in which there is no longer any actual

controversy.'" *In re A.G.*, 139 Ohio St.3d 572, 2014-Ohio-2597, 13 N.E.3d 1146, ¶ 36, quoting Black's Law Dictionary (9th Ed. 2009).

**{¶68}** The doctrine of mootness applies when "issues are no longer live, or when the parties no longer have a legally cognizable interest in the outcome." *U.S. Bank Natl. Assn. v. Marcino*, 7th Dist. Jefferson No. 09 JE 29, 2010-Ohio-6512, ¶ 7, citing *State ex rel. Gaylor, Inc. v. Goodenow*, 125 Ohio St.3d 407, 2010-Ohio-1844, 928 N.E.2d 728, at ¶ 10. "As a general rule, courts will not resolve issues that are moot." *Nextel West Corp. v. Franklin County Bd. of Zoning Appeals*, 10th Dist. Franklin No. 03AP-625, 2004-Ohio-2943, ¶ 10.

Legal Analysis

**{¶69}** On August 31, 2017, the McGiffins filed a motion for a temporary restraining order. Doc. 2. On October 5, 2017, the magistrate issued a temporary restraining order that was set to expire after fourteen days. Doc. 9. This order also set a hearing on this matter for October 17, 2017. Doc. 9. However, on October 11, 2017, the parties filed a joint motion that requested that the October 17, 2017 hearing be converted to a status conference. Doc. 11. On October 13, 2017, the magistrate granted this motion and extended the temporary restraining order until October 31, 2017. Doc. 13. On October 16, 2017, the Skuriches filed a motion that raised a general objection to the magistrate's temporary restraining order. Doc. 14.

{¶70} However, we have examined the record and have not found an order that extended this temporary restraining order after its expiration on October 31, 2017. When a "temporary restraining order has expired, there is no longer a controversy in dispute." *Bambeck v. Catholic Dioceses of Cleveland*, 8th Dist. Cuyahoga No. 86894, 2006-Ohio-4883, ¶ 20. *See State ex rel. v. Board of County Com'rs of Allen County*, 32 Ohio St.3d 24, 512 N.E.2d 332, fn. 2 (1987). Since the temporary restraining order has expired in this case, the "question of its propriety" is moot. *State ex rel. Pfeiffer v. Columbus Inn & Suites*, 10th Dist. Franklin No. 14AP-132, 2014-Ohio-4358, ¶ 41. *See also McClead v. McClead*, 4h Dist. Washington No. 06CA67, 2007-Ohio-4624, ¶ 14.

{¶71} Underlying the Skuriches' challenge to the propriety of this temporary restraining order is an argument that their Original Plans complied with the Declaration of Covenants and that they should be allowed to build their house in accordance with these Original Plans. The Skuriches argue that this Court should "affirmatively conclude that the Skuriches' * * * [Original Plans] are compliant with the Declaration of Covenants and permissible to build." Cross-Appellants' Brief, 30. However, even if the expiration of the temporary restraining order had not rendered the issue of its propriety moot, the Skuriches would still not prevail on this underlying argument.

{¶72} On July 23, 2019, the McGiffins and Skuriches submitted agreed upon stipulations to the trial court. Doc. 72. The fifth stipulation reads as follows:

"Drawings and elevations for the home the Skuriches currently wish to build on the lot are attached hereto as Ex. B." Doc. 72, Ex. B. The Skuriches attached the Revised Plans—not the Original Plans—as Exhibit B. Doc. 72, Ex. B. *See* Doc. 4, Ex. A-3. The trial court, in its judgment entry, evaluated the Revised Plans in light of the restrictions in the Declaration of Covenants, the arguments of the parties, and the applicable law. Doc. 84. The trial court then concluded that the Revised Plans complied with the Declaration of Covenants and that "the Skuriches may proceed to build their home in accordance with the plans set forth in Stipulated Exhibit B * * *." Doc. 84.

{¶73} The Skuriches could have submitted a copy of the Original Plans along with the Revised Plans for a determination as to whether the Original Plans were also in compliance with the Declaration of Covenants. However, the Skuriches chose only to submit their Revised Plans for evaluation. In its judgment entry, the trial court issued the exact determination on the Revised Plans that the Skuriches requested. The Skuriches now appear to have found the relief that they requested to be insufficient and argue on appeal that they should be permitted to build their house in accordance with the Original Plans.

{¶74} Because the Skuriches could have presented this argument for a determination by the trial court but did not, they have waived this argument on appeal. *J.P. Morgan Chase Bank v. Macejko*, 7th Dist. Mahoning Nos. 07-MA-148, 08-MA-242, 2010-Ohio-3152, ¶ 36; *Jones v. Carpenter*, 10th Dist. Franklin No.

17AP-401, 2019-Ohio-619, ¶ 63. The trial court granted the Skuriches the relief that they requested. They have not, in this cross-assignment of error, demonstrated that the trial court committed an error. For the foregoing reasons, the Skuriches third cross-assignment of error is overruled.

*Conclusion*

**{¶75}** Having found no error prejudicial to the plaintiffs-appellants, cross-appellees in the particulars assigned and argued, the judgment of the Mahoning County Court of Common Pleas is affirmed as to these issues.

**{¶76}** Further, having found no error prejudicial to the defendants-appellees, cross-appellants in the particulars assigned and argued, the judgment of the Mahoning County Court of Common Pleas is affirmed as to these issues.

***Judgment Affirmed***

**ZIMMERMAN and SHAW, J.J., concur.**

**/hls**

**Judges John R. Willamowski, William R. Zimmerman, and Stephen R. Shaw, of the Third District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.**