[Cite as *D S C Ents., L.L.C. v. Ascent Utica Minerals, L.L.C.*, 2026-Ohio-2272.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
JEFFERSON COUNTY

D S C ENTERPRISES, L.L.C.,

Plaintiff-Appellant,

v.

ASCENT RESOURCES-UTICA, L.L.C., ET AL.,

Defendants-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 JE 0026

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 24 CV 497

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Cody Smith*, *Atty. Sean E. Jacobs*, Emens Wolper Jacobs & Jasin Law Firm Co. LPA, and *Atty. Thomas D. White*, EQUES, Inc., for Plaintiff-Appellant, D S C Enterprises, LLC and

*Atty. Kevin L. Colosimo* and *Atty. Christopher W. Rogers,* FBT Gibbons LLP, Defendant-Appellee, Ascent Utica Minerals, LLC.

Dated:  June 16, 2026

**HANNI, J.**

{¶1}    Plaintiff-Appellant D S C Enterprises, LLC (DSC) appeals a Jefferson County Common Pleas Court order granting a motion for summary judgment filed by Defendant-Appellee Ascent Utica Minerals, LLC (AUM).  The trial court interpreted the language in a 1977 Deed, "[e]xcepting all minerals, coal, oil and gas; (83/464[1]" to create a new reservation for all minerals, coal, oil and gas underlying 78.3384 acres of property.  Consequently, the trial court held that AUM owned all of the mineral interests free and clear from any claim by DSC.

{¶2}    DSC asserts the trial court erred in its interpretation because this plain language of the 1977 deed reflected the owner's intent to merely recite a prior mineral reservation in a 1902 deed and not to create a new reservation.  DSC reasons that the trial court erroneously applied our holding in *McAuley v. Brooker*, 2017-Ohio-9222 (7th Dist.) because the deeds and ownership contexts in that case are distinguishable from those in the instant case.  DSC contends the trial court disregarded our precedent in *Pabin v. Eberle*, 2019-Ohio-2728 (7th Dist.), which dictates that the 1977 Deed conveyed the minerals with the surface.  Finally, DSC asserts that even if the 1977 Deed language is ambiguous, the trial court should have interpreted it to convey the minerals with the Surface.

{¶3}    For the following reasons, we find the trial court correctly found that the 1977 Deed created a new exception of the minerals, coal, oil, and gas.  The initial portion of the exception language in that deed stands alone to create the exception, as it is followed by a semicolon, which separates it from the citation to the 1902 Deed.  Moreover, the exception and reservation in the 1902 Deed had been extinguished well before the 1977 Deed was created.  While the 1902 Deed citation was not necessary, its inclusion in the 1977 Deed did not result in a conclusion that the entire phrase was merely a citation to the 1902 Deed and not an exception of the minerals.

---

[1] This deed contains an unclosed paren. in original.

Case No. 25 JE 0026

## A.    RELEVANT FACTS/CONVEYANCES

{¶4}    The parties agree to the existence of the following conveyances of the property itself (Surface) and the minerals, coal, oil, and gas underlying the Surface.

{¶5}    On March 11, 1876, Alexander and Mary Cellars conveyed a tract of land to George Warren that included the Surface and minerals.

{¶6}    On April 22, 1902, George Warren and his wife, Lavina Warren, conveyed the same tract to Edward Warren (1902 Deed).  The 1902 Deed was recorded in Jefferson County, Ohio Deed Records in Volume 83, Page 464.

{¶7}    The 1902 Deed contains the following exception and reservation to George and Lavina Warren: "excepting and reserving from the same all minerals, coal oil and gas." (Warren Reservation).

{¶8}    George Warren died testate in 1904 in Jefferson County and his estate was probated.  His will devised the minerals, coal, oil and gas underlying the Surface to Lavina Warren and their three children:  Edward Warren, Ida Cox, and Mary A. Warren.

{¶9}    On November 14, 1921, Lavina Warren Lawrence and her husband, Charles Lawrence, conveyed "all the minerals coal, oil and gas" to Ross Warren via quitclaim Deed, which was recorded in Jefferson County (1921 Deed).   This Deed indicated that the conveyance was "without any reservation whatsoever."

{¶10}  In 1930, Ida Cox and William Cox conveyed all their rights, title, and interest in the Surface to Edward Warren, Ross Warren, and Mary A. Warren via quitclaim deed recorded in Jefferson County.

{¶11}  On October 7, 1931, Ross Warren and Mary Warren as husband and wife, and Mary A. Warren conveyed all of their rights, title, and interest in the Surface to Edward Warren via quitclaim deed, which was recorded in Jefferson County.

{¶12}  The parties agree that Edward Warren became vested with all of the minerals, coal, oil, and gas, as well as the Surface, and the Warren Reservation was extinguished because the mineral interest merged with the Surface.

{¶13}  On April 23, 1943, Edward Warren and Mary Warren, as husband and wife, conveyed their interests to John Zamboria, Sr. and Mary Zamboria via quitclaim deed, which was recorded in Jefferson County.

{¶14} John Zamboria, Sr. (aka John Zambora on Certificate of Transfer) died in 1951 and his one-half interest transferred to John Zamboria, Jr., (aka John Zambora on Certificate of Transfer), subject to a life estate in Mary Zamboria (aka Mary Zambora on Certificate of Transfer). This was evidenced by a Certificate of Transfer that was recorded in Jefferson County.

{¶15} Mary Zamboria/Zambora transferred her interest to John Zamboria, Jr./John Zambora via quitclaim deed in 1971, which was recorded in Jefferson County.

{¶16} On August 6, 1977, John Zamboria, Jr. and his wife, Bertha Zamboria, conveyed their interests to Kenneth Cornish and John A. Boughner (1977 Deed). The 1977 Deed contains the legal description of the Surface and the following language: "Excepting all minerals, coal, oil and gas; (Deed 83/464." (unclosed paren. in original) (Zamboria Exception).

{¶17} On January 3, 1978, Kenneth and Louise Cornish and John A. and Yvonne Boughner conveyed their interests to Bantam Ridge Development Corporation via general warranty deed, which was recorded in Jefferson County. On September 1, 1983, Bantam Ridge Development Corporation conveyed its interests back to Kenneth and Louise Cornish via general warranty deed, which was recorded in Jefferson County.

{¶18} On March 25, 1992, Kenneth and Louise Cornish conveyed interests to themselves as joint tenants with rights of survivorship. This deed was recorded in Jefferson County. Kenneth Cornish died in 2007, and his interest transferred automatically to Louise Cornish and an affidavit of transfer for real estate to survivor was filed in Jefferson County.

{¶19} On August 7, 2007, Louise Cornish executed a transfer on death deed naming Dana Snider and Susan Cornish as beneficiaries.

{¶20} On September 17, 2011, Louise Cornish conveyed an interest to DSC by general warranty deed, which was recorded in Jefferson County (2011 Deed).

{¶21} On December 4, 2017, after the deaths of John Jr. and Bertha Zamboria, their sole heir, Ronald Lee Zamboria, conveyed to Ascent Resources-Utica (ARU) all of his rights, title, and interest in and to all of the oil, gas, and other minerals, excluding coal, as set forth in an attached Exhibit A. (2017 Deed). Exhibit A contained exceptions,

including "Excepting all minerals, coal, oil and gas; (Deed 83/464." (unclosed paren. in original). This was recorded in Jefferson County.

**{¶22}** On September 18, 2018, ARU conveyed the mineral interests from the 2017 Deed to AUM and that Deed was recorded in Jefferson County (2018 Deed).

**{¶23}** On January 6, 2023, AUM entered into an oil and gas lease with ARU which covered the oil and gas underlying the Surface (2023 Lease). This was recorded in the official records in Jefferson County.

## B. PROCEDURAL HISTORY

**{¶24}** On November 13, 2024, DSC sued ARU and AUM for declaratory judgment, to quiet title, trespass, conversion, and unjust enrichment. DSC explained it sent ARU a letter on September 14, 2023 notifying ARU that it owned the oil and gas underlying the Surface and ARU would be committing trespass by producing oil and gas underlying the Surface. DSC requested ARU contact it if ARU wished to lease oil and gas under the Surface. DSC stated that ARU never initiated contact.

**{¶25}** DSC further alleged that in October 2023, ARU pooled and unitized part of the Surface with other lands to form the Noelle SE CRC JF Unit, which was recorded in Jefferson County records. DSC averred ARU drilled oil and gas wells on the Noelle SE and SW Units, which were drilled through the oil and gas under the Surface. DSC averred those wells have been producing oil and gas.

**{¶26}** DSC averred it was entitled to a declaration that the 1977 Deed did not sever any oil or gas from the Surface, DSC is the rightful owner of the oil and gas, and AUM does not own any oil and gas interest under the Surface. DSC requested the court declare the 2017 and 2018 Deeds void ab initio to the extent they covered the oil and gas under the Surface. DSC further requested that the court declare the 2023 lease null and void ab initio to the extent it covers oil and gas underlying the Surface.

**{¶27}** DSC additionally requested that the court declare it the sole owner of the oil and gas underlying the Surface and find ARU trespassed on and converted its property willfully, maliciously, and recklessly, entitling it to punitive damages. DSC further asserted ARU was unjustly enriched by taking its oil and gas under the Surface and received a benefit without compensating DSC by removing its oil and gas without the right to do so.

{¶28} On December 13, 2024, ARU and AUM answered the complaint and filed counterclaims for declaratory judgment and to quiet title.

{¶29} On August 25, 2025, the trial court entered a stipulated order dismissing the trespass, conversion, and unjust enrichment claims based on a settlement reached between DSC and ARU. The claims between DSC and AUM remained.

{¶30} On August 29, 2025, DSC filed a motion for summary judgment on its claims and AUM's counterclaims. AUM also filed a motion for summary judgment.

{¶31} The trial court held a hearing on the summary judgment motions and on October 22, 2025, the court granted summary judgment in favor of AUM.

{¶32} The trial court identified the only controversy as the words "(Deed 83/464" in the 1977 Deed. The court relied on our decision in *McAuley v. Brooker*, 2017-Ohio-9222 (7th Dist.) to find that the 1977 Deed created a new reservation despite the "(Deed 83/464" words. The court held that a new exception was created because the words preceding "(Deed 83/464", which are, "[e]xcepting all minerals, coal, oil and gas," were clear and unambiguous. The court further reasoned that despite DSC's claim that a break in title to the minerals existed in the Recorder's Office, no break existed because the overall records showed the title via Jefferson County Probate Court records. The court noted that any title searched would reveal both types of records. The court also held that the exception language accompanied by the "(Deed 83/464" words were not included merely to give notice of the 1902 Deed reservation because the parties knew the minerals had reunified with the Surface and thus the prior deed reference was not necessary.

{¶33} The court concluded that only two reasons existed for the 1977 Deed language: either John Zamboria, Jr. knew he owned the minerals and wanted to except them, or he did not know he owned them but still did not want to convey them. The court held that AUM owned the minerals free and clear from any interest of DSC and AUM would prepare a final order consistent with its order for recording purposes.

## C.    ASSIGNMENT OF ERROR AND PARTIES' ARGUMENTS

{¶34} On November 18, 2025, DSC filed the instant appeal, raising the following sole assignment of error with subparts:

**THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN
FAVOR OF ASCENT UTICA MINERALS, LLC[.]**

**{¶35}** DSC identifies the dispositive issue on appeal as whether the phrase in the 1977 Deed "[e]xcepting all minerals, coal, oil and gas; (Deed 83/464" created a new mineral exception in the Zamborias or whether it merely recited the 1902 mineral interest that was severed in the 1902 Deed in Volume 83, Page 464 of the Deed Records.  DSC advances four reasons for finding that the phrase was merely a recitation of the 1902 Deed language and did not create a new exception.

**{¶36}** DSC first asserts that the word-for-word recitation of the Warren Reservation with a direct citation to the place where it could be found in the records evidences the Zamborias' intent to merely recite the prior reservation.  DSC notes that the Ohio Supreme Court has held that courts must give effect to all words used in a deed, which would include the "(Deed 83/464" phrase.  *Gill v. Fletcher*, 74 Ohio St. 295, 304 (1906).  DSC also contends that the use of a semi-colon in the 1977 Deed's exception language, which separated the recitation of the Warren Reservation from the recording information, indicates that the Zamborias merely referred to the 1902 Deed reservation in their 1977 Deed.

**{¶37}** DSC further asserts that the trial court misinterpreted our decision in *McAuley v. Brooker*, 2017-Ohio-9222 (7th Dist.).  DSC maintains that the deed at issue in *McAuley* included both a general reservation and references to the previously severed mineral interest, while the 1977 Deed contains no general reservation, but refers only to the 1902 Deed.  DSC also reasons that the successor-in-interest in *McAuley* would have owned the severed mineral interest even without merger of the mineral estate with the surface estate, while John Zamboria would not own the mineral interest in the 1902 Deed without merger of the mineral and surface estates in 1931.

**{¶38}** Third, DSC asserts the trial court disregarded our decision in *Pabin v. Eberle*, 2019-Ohio-2728 (7th Dist.), which it finds legally indistinguishable from this case.  DSC submits that similar to the grantor in *Pabin*, the grantor here failed to expressly reserve the minerals.

**{¶39}** Finally, DSC submits that even if we determine the exception phrase in the 1977 Deed is ambiguous, the ambiguity should be construed against AUM as grantor and

DSC should be granted as large an estate as possible.  DSC cites caselaw holding that if two interpretations of a deed are possible, and one passes title and the other does not, the title should pass.

### D.    STANDARD OF REVIEW

**{¶40}** The parties agree that the standard of review for a motion for summary judgment is de novo.  Thus, we review the judgment independently and without deference to the trial court's determination.  *EAP Ohio, LLC v. Sunnydale Farms, LLC*, 2024-Ohio-4522, ¶ 37 (7th Dist.), citing *Grafton v. Ohio Edison Co.*, 1996-Ohio-336.  Civ.R. 56(C) provides that a court may grant summary judgment when: (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party.  *Mercer v. Halmbacher*, 2015-Ohio-4167, ¶ 8 (9th Dist.); Civ.R. 56(C).

**{¶41}** The party moving for summary judgment carries the initial burden of demonstrating the absence of a genuine issue of material fact as to all of the essential elements of the case with evidence of the type listed in Civ.R. 56(C).  *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996).  "[T]he moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims."  *Id.* at 293.  The moving party is not required to support its motion with affidavits, but must inform the court of the basis for its motion and identify the portions of the materials listed in Civ.R. 56(C) which support its assertion of the absence of a genuine issue of material fact.  *Id.*, citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**{¶42}** If the moving party meets this burden, the nonmoving party has a reciprocal burden to set forth specific facts to show a genuine issue of material fact.  *Id.*; Civ.R. 56(E).  Similar to the moving party, Civ.R. 56 does not impose a requirement on the non-moving party to submit affidavits or other evidence in support of its position.  However, the nonmoving party cannot "merely restat[e] unsubstantiated allegations contained within the original pleadings.  Instead, the nonmoving party must demonstrate the continued existence of a genuine issue of material fact by directing the court's attention to relevant, affirmative evidence of the type listed in Civ.R. 56(C)."  *Traditions Tavern v.*

*Columbus*, 2006-Ohio-6655, ¶ 11 (10th Dist.), citing *Dresher*, 75 Ohio St.3d at 293; Civ.R. 56(E).

**{¶43}** "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993).

## E.    LAW

**{¶44}** In the case of contracts, deeds, or other written instruments, the construction of the writing is a matter of law, which is reviewed de novo. *Long Beach Assn., Inc. v. Jones*, 82 Ohio St.3d 574, 576 (1998). Under a de novo review, an appellate court may interpret the language of the contract, substituting its interpretation for that of the trial court. *McAuley*, 2017-Ohio-9222, at ¶ 17, citing *Witte v. Protek Ltd.*, 2010-Ohio-1193, ¶ 6, (5th Dist.).

**{¶45}** Written instruments "are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. East Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of the syllabus. "When construing a deed, a court must examine the language contained within the deed, the question being not what the parties meant to say, but the meaning of what they did say, as courts cannot put words into an instrument which the parties themselves failed to do." *Johnson v. Consol. Coal Co.*, 2015-Ohio-2246, ¶ 15 quoting, *McCoy v. AFTI Properties, Inc.*, 2008-Ohio-2304, ¶ 8 (10th Dist.).

**{¶46}** If the terms of the written instrument are clear and unambiguous, courts must give the words their plain and ordinary meaning and may not create a new contract by finding the parties intended something not set out in the writing. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, (1978). A court applies a plain reading of the words in the four corners of the document. *1803 Resources, LLC v. Lineback*, 2025-Ohio-3271, ¶ 137 (7th Dist.), citing *McGiffin v. Skurich*, 2021-Ohio-2741, ¶ 20 (7th Dist.) (citing *Long Beach* at 576, and *LRC Realty, Inc. v. B.E.B. Properties*, 2020-Ohio-3196, ¶ 17). Courts should harmonize the provisions of the writing and words to give effect to every word. *Lineback* at ¶ 139, quoting *Christe v. GMS Mgt. Co.*, 124 Ohio App.3d 84, 88 (9th Dist.). When the writing is unambiguous, we must apply it "as written and conduct no further investigation." *Lineback* at ¶ 140, quoting *State v. Hurd*, 89 Ohio St.3d 616

(2000), citing *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 584 (1995) (addressing statutory language).

{¶47} When the plain language of a written instrument is ambiguous, a court can look to parol evidence to resolve the ambiguity and ascertain the parties' intent. *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 521 (1994); *City of Steubenville v. Jefferson Cty.*, 2008-Ohio-5053, ¶ 22 (7th Dist.). Terms in a contract are ambiguous if their meanings cannot be determined from reading the entire contract, or if they are reasonably susceptible to multiple interpretations. *First Natl. Bank of Pennsylvania v. Nader*, 2017-Ohio-1482, ¶ 25 (9th Dist.) "The decision as to whether a contract is ambiguous and thus requires extrinsic evidence to ascertain its meaning is one of law." *Id.*, quoting *Ohio Historical Soc. v. Gen. Maintenance and Eng. Co.*, 65 Ohio App.3d 139, 146 (10th Dist. 1989).

## F.    ANALYSIS

{¶48} We affirm the trial court's judgment granting summary judgment in favor of AUM. A plain reading of the exception clause in the 1977 Deed is that John Zamboria, Jr. and his wife, Bertha, created a new exception for themselves to "all minerals, coal, oil and gas" from their conveyance of the Surface. While the citation "(Deed 83/464" was not necessary in the 1977 Deed, it does not result in a conveyance of the minerals, coal, oil and gas with the Surface.

{¶49} The terms "reservation" and "exception" are often used interchangeably, but they have different meanings. *See Goble v. CNX Gas Co., LLC*, 2023-Ohio-3603, ¶ 15 (7th Dist.). This Court has relied on *Black's Law Dictionary* definitions of "reservation" and "exception." *Am. Energy Corp. v. Datkuliak*, 2007-Ohio-7199, ¶ 74-75 (7th Dist.). A "reservation" is defined as a "creation of a new right or interest (such as an easement) by and for the grantor, in real property being granted to another." *Black's Law Dictionary* (8th Ed.2004) 1333. An "exception" is defined as the "retention of an existing right or interest, by and for the grantor, in real property being granted to another." *Id.* at ¶ 74. Since the two terms are often used arbitrarily, courts do not rely on the use of these terms in order to establish whether a grantor has created a reservation or exception. *Datkuliak* at ¶ 75 (citations omitted). We look at the written deed as a whole in light of the circumstances and we construe the conveyance most strongly in favor of the grantee, not

the grantor, since the grantor used the words to make the conveyance. *Id.* at ¶ 75, quoting *Pure Oil Co. v. Kindall*, 116 Ohio St. 188, 203 (1927).

**{¶50}** It is also observed that an individual can only convey what he or she owns. *Sharp v. Miller*, 2018-Ohio-4740, ¶ 28 (7th Dist.). In *Goble*, we held that "[w]here the grantor owned the interest prior to executing a deed, and merely retained this interest after conveying the bulk of the property, the grantor has excepted that interest and retains fee simple ownership." *Goble* at ¶ 17.

**{¶51}** DSC argues the plain language of the 1977 Deed merely recited the Warren Reservation and the Zamborias' omission of the "and reserving from the same" language from the 1902 Deed shows they did not intend to create a new reservation for themselves in the 1977 Deed. However, the Zamborias were not required to exactly quote or even refer to the Warren Reservation because that reservation had already been extinguished. Both DSC and AUM agree the Warren Reservation was extinguished and the minerals reunified with the Surface upon delivery of the 1931 Deed to Edward D. Warren.

**{¶52}** Accordingly, the Zamborias need not have included any citation or reference to the 1902 Deed or Warren Reservation. At the time that John Zamboria, Jr. and Bertha E. Zamboria conveyed the Surface to Kenneth D. Cornish and John A. Boughner in 1977, the Zamborias owned both the Surface and the minerals, coal, oil and gas rights under the Surface. Since the Zamborias as grantors already owned 100% of the oil and gas rights under the Surface at that time, they necessarily retained the minerals, coal, oil and gas upon conveying the Surface.

**{¶53}** We reject DSC's assertion that *Pabin* controls and the 1977 Deed fails to meet the standard established in *McAuley*. Here, the trial court found that *McAuley* dictated a finding that the Zamborias created a new reservation, despite the "(Deed 83/464" words. We agree the instant case is more similar to *McAuley* than to *Pabin*.

**{¶54}** In *McAuley*, 2017-Ohio-9222, at ¶ 8 (7th Dist.), Cora Atkinson's estate conveyed equal one-third interests in a mineral estate to three of her devisees/heirs in 1960. Cora Atkinson owned the mineral interests and the property at that time.

**{¶55}** In 1961, Cora Atkinson's estate sold the real property to McAuley's predecessors in title. *Id.* at ¶ 9. The 1961 deed contained the following language:

> RESERVING from the operation of this deed the undivided interest in the oil, gas, coal and other minerals underlying said premises and reserved in a deed from Isaac Atkinson and Hannah Atkinson to George Rice and further reserved in a deed from Isaac W. Atkinson to Cora Atkinson, in Volume 89 at Page 576, Deed Record of Noble County, Ohio.

*Id.* at ¶ 9. On appeal, the relevant issue was whether the trial court erred by finding that the reservation in the 1961 deed preserved the mineral interests of Cora's devisees/heirs.

**{¶56}** In our decision, we divided the relevant clause in the 1961 deed into three parts. *McAuley* at ¶ 30 (7th Dist.). We explained that the first part, "RESERVING from the operation of this deed the undivided interest in the oil, gas, coal and other minerals underlying said premises," was a reference to the entire mineral estate. *Id.* We noted this phrase was nearly identical to the language used by the grantor in a 1937 deed when he conveyed the surface to Cora Atkinson and excepted the mineral interest to himself. *Id.* at ¶ 32. We concluded this same language indicated no mineral interest was being conveyed in the 1961 deed. *Id.*

**{¶57}** We then reviewed the second part of the clause, "and reserved in a deed from Isaac Atkinson and Hannah Atkinson to George Rice." *Id.* at ¶ 33. We held that this referred to a clause in an 1874 deed where Isaac and Hannah Atkinson sold to George Rice all of the minerals underlying 37 acres of land. *Id.* We found the word "reserved" in this second clause of the 1961 deed inaccurate because Isaac, Hannah and George did not purchase any minerals. *Id.* We held that "either this clause means nothing because it is an inaccurate description of what transpired in 1874, or it is an inartfully worded notice of the Rice mineral interest that George Rice purchased in 1874 and that was memorialized in the 1874 mineral deed." *Id.*

**{¶58}** We reviewed the last portion of the relevant clause in the 1961 deed, "and further reserved in a deed from Isaac W. Atkinson to Cora Atkinson, in Volume 89 at Page 576, Deed Record of Noble County, Ohio." *McAuley*, 2017-Ohio-9222, at ¶ 34 (7th Dist.). We held the term "further" was not a mere reference to the Rice mineral interest because the 1937 deed had nothing to do with Rice or his mineral interest since the interest was already established in 1874 and George Rice was a stranger to the surface conveyance

Case No. 25 JE 0026

to Cora Atkinson in 1937. *Id.* We concluded the use of the word "further" was a reference to the mineral reservation of the Atkinsons that was created by the 1937 deed. *Id.*

**{¶59}** As AUM notes, we read the 1961 deed as a whole in *McAuley*, and found that even though it used the same language as in the 1874 and 1937 deeds, the clause in the 1961 deed:

> indicates all the minerals underlying the property are excluded from the operation of the 1961 deed with those minerals interests composed of the Rice mineral interest and the Atkinson mineral interest; the reference to the 1874 deed is notice of the Rice mineral deed and the reference to the 1937 deed is the Atkinson mineral reservation and notice of the prior Rice minerals interest. The language used also indicates Cora's estate is reserving any minerals Cora owned at the time of her death which undisputedly are the Atkinson mineral interests, and any minerals not reserved or previously conveyed.

*Id.* at ¶ 35.

**{¶60}** Judge Waite dissented in *McAuley*, looking to common rules of grammar and language usage. *Id.* at ¶ 51 (Waite, dissenting). She found that because no comma separated the Rice reference in the 1961 deed from the Atkinson reference, the clause referred to one interest, the Rice interest, which was found in both the Atkinson's deed to George Rice, and the Isaac Atkinson deed to Cora Atkinson. *Id.* at ¶ 52 (Waite, dissenting).

**{¶61}** In *Pabin*, Ella Eberle owned the surface rights to a property in Monroe County, as well as the oil and gas rights, minus a prior reservation. *Pabin v. Eberle*, 2019-Ohio-2728, ¶ 5 (7th Dist.). Ella sold the surface rights to Emmett and Stella Huffman, but reserved her oil and gas interest in the property. *Id.* at ¶ 6.

**{¶62}** Ella died intestate, and her four heirs each inherited 1/4 share of the oil and gas interest Ella had reserved, including Clyde Eberle and Arnold Eberle. *Id.* at ¶ 7. Ella's four direct heirs died, but they each had heirs of their own, including Clyde's heir, Eileen Eberle, and Arnold's heir, Gerald and Mary Ella Cramer. *Id.* at ¶ 7-8.

**{¶63}** The Huffmans owned the surface. *Pabin* at ¶ 9. Emmett Huffman died testate and Stella Huffman was heir to all of his property. *Id.* at ¶ 8, 69, 89. Stella sold

her rights to the property to Kenneth Huffman and the deed stated, "EXCEPTING AND RESERVING the coal heretofore sold by prior Grantors." *Id.* at ¶ 70, 90. The deed also stated, "EXCEPTING the oil and gas royalty reserved or excepted by prior Grantors." *Id.*

**{¶64}** Kenneth Huffman sold his rights to Chester Pabin and Chester Pabin sold his rights to Philip and Christina Pabin (Pabin appellees). *Id.* at ¶ 9, 71. When Stella Huffman died, her heir was Donald Cameron. *Id.* at ¶ 8. Stella's heirs, Donald Cameron and his wife Gloria, assigned their interest to ODMA Resources, LLC. (Cameron appellants). *Id.* at ¶ 73.

**{¶65}** Eileen Eberle recorded an oil and gas lease she had entered into with Eclipse Resources. *Id.* at ¶ 10. She leased her entire interest to Eclipse. *Id.*

**{¶66}** Relevant to this part of the appeal, the Cameron appellants appealed the trial court's granting of summary judgment in favor of the Pabin appellees. *Pabin* at ¶ 78, 85. We held that merger of the surface of the property and 1/4 of the oil and gas rights did not occur in Emmett Huffman because although he held the surface and a portion of the oil and gas reservation at the same time, no intent to merge was established as Ella Eberle died intestate. *Id.* at ¶ 86, 88. We further held that merger of the 1/4 mineral estate and surface estate occurred in Stella Huffman upon the death of Emmett Huffman as his will bequeathed all of his property to Stella. *Id.* at ¶ 89.

**{¶67}** However, we further held that because the exceptions and reservations in Stella's deed did not reserve the oil and gas rights to Stella, her conveyance of the property to Kenneth Huffman included the 1/4 of oil and gas under the property. *Id.* at ¶ 90-91. We reasoned that since Stella did not reserve an interest in the oil and gas, and Chester Pabin did not expressly reserve an oil and gas interest, the Pabin appellees owned both the property and the 1/4 oil and gas rights. *Id.* at ¶ 91.

**{¶68}** In the instant case, the 1977 Deed is similar in its language to the 1902 Deed. However, it is not identical, as DSC asserts. The 1902 Deed stated it was "excepting and reserving from the same all minerals, coal, oil and gas," while the 1977 Deed stated it was "[e]xcepting all minerals, coal, oil and gas; (Deed 83/464." The 1977 Deed did not identify or refer to prior grantors, as done in *McAuley* and *Pabin*. While it did contain a citation to the record location of the 1902 Deed, this does not lead to a

Case No. 25 JE 0026

conclusion that the entire clause was merely a citation to the extinguished reservation of the minerals, coal, oil and gas.

**{¶69}** The exception language in the instant case is more aligned with the reservation language in *McAuley* rather than *Pabin*. The 1961 deed in *McAuley* began with the initial reservation of the oil, gas, coal and other minerals as it was "[r]eserving from the operation of this deed the undivided interest in the oil, gas, coal and other minerals underlying said premises." *McAuley*, 2017-Ohio-9222, at ¶ 9 (7th Dist.). This clause can stand alone in that this initial reservation phrase identifies the prior reservations with the word "and" before each prior reservation.

**{¶70}** Similarly here, the 1977 Deed contained the initial reservation to the Zamborias. It is followed by a semicolon and a citation to the deed record where the last reservation was made, the 1902 Deed. Similar to the first phrase in the 1961 deed in *McAuley* that identified the exception without any qualifier tying it to any prior grantor's actions, the 1977 Deed excepted the minerals, coal, oil and gas to the Zamborias, and merely referred to the last prior reservation that previously occurred.

**{¶71}** The semicolon between the exception phrase and "(Deed 83/464" signifies a separation. Dictionary.com defines "semicolon" as "the punctuation mark (;) used to indicate a major division in a sentence where a more distinct separation is felt between clauses or items on a list than is indicated by a comma, as between the two clauses of a compound sentence." "[S]emicolons denote separate and distinct elements or thoughts, whereas commas are used to separate items in a series or list." *State v. Frost*, 2019-Ohio-3540, ¶ 36 (12th Dist.), citing and quoting definition of "semicolon" as defined in *Webster's New World Dictionary* 1220 (1994). Thus, we find that the "[e]xcepting all minerals, coal, oil and gas" phrase is separate from the citation "(Deed 83/464." Whether the Zamborias knew the extent of the mineral interest they excepted is irrelevant.

**{¶72}** The reservation in *Pabin* is different than that in the 1977 Deed. There, merger had occurred in Stella Huffman and her deed to Kenneth Huffman stated that it was excepting oil and gas royalties "reserved or excepted by prior Grantors." It further excepted "the oil and gas royalty reserved or accepted by prior Grantors." The Huffman deed did not separate the reservation from the prior grantors' reservations or exceptions. Rather, it identified the reservation and exception as the same reservations and

exceptions from the prior grantors. The 1977 Deed did not link the Zamborias' exception to the prior grantor's deed. It merely cited the location of the last reservation.

{¶73} Accordingly, we find that the plain language of the 1977 Deed establishes that the Zamborias intended to reserve to themselves the minerals, coal, oil and gas from their conveyance of the Surface in the 1977 Deed. Thus, the trial court correctly granted summary judgment in favor of AUM and held that AUM owns all of the minerals, coal, oil and gas under the Surface.

{¶74} For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, P.J., concurs.

Robb, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**